THE UNITED STATES DISTRICT COURT
THE DISTRICT OF UTAH

| | |
|---|---|
| STACY MICKELSEN, KIRK R. MICKELSEN, and AMY V. BELLUM,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>ARAMARK SPORTS & ENTERTAINMENT SERVICES,<br><br>　　　　　　Defendant,<br><br>and,<br><br>IN THE MATTER OF COMPLAINT OF SUMMER PARADISE, INC., ROGER COMSTOCK, TRACEE COMSTOCK, PRESTON MILLER, SANDY MILLER, BRIAN HORAN, KIM HORAN, DAVE DANIELS, BUD BULLARD, KRISTI BULLARD, CRAIG CURTIS, EARLYN CURTIS, DONALD BELLUM, STEVE MILLS, GREG PICKEREL, GINA PICKEREL, TROY SEYFER, GLENN LEWIS, REX ROLLO, NADINE ROLLO, STEVEN TYCKSEN, RUTH TYCKSEN, ROGER COOK, COLLEEN COOK, and KEVIN DANIELS as Owners or Owners Pro Hac Vice of a 2001 73-foot Stardust Houseboat "SUMMER PARADISE" for Exoneration from or Limitation of Liability,<br><br>　　　　　　Petitioners. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT BERNARD CORNELISSEN**<br><br>Lead Case No. 4:18-cv-00072-DN-PK<br><br>Member Case No. 2:18-cv-00158<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

　　　　This action consists of two consolidated cases arising from an explosion that occurred on the Summer Paradise houseboat in July 2017 resulting in the tragic death of one occupant and severe injuries to several others. The lead case is a negligence action by injured Summer Paradise occupants ("Plaintiffs") against defendant Aramark Sports & Entertainment Services

("Aramark"). The member case is an action brought by the owners of the Summer Paradise houseboat ("Petitioners") to limit their liability for the damages caused by the explosion.

A key issue in the case is whether the hose which drained overflow fuel into the lake was intact and secured to the hull at the time of the explosion, or whether it had broken off at an earlier date and was lying in the engine compartment.

In an expert report dated November 3, 2019, Aramark's expert Arun Kumar stated his opinion that the drain hose was still attached to the hull at the time of the explosion.[1] This opinion was based, in part, on calcium deposits found on the drain hose's fitting consistent with exposure to outdoor elements.[2]

Plaintiffs' joint expert report was co-authored by Carl Finocchiaro and Bastiaan Cornelissen. Cornelissen rebuts Dr. Kumar's opinion, stating that there is no scientific basis to infer from the presence of calcium-bearing deposits on the fracture surface of the fuel drain that the fractured fitting was in place in the hull at the time of the explosion.[3]

Aramark has filed a motion to exclude Mr. Cornelissen's opinion pursuant to Federal Rule of Evidence 702 (the "Motion").[4] Plaintiff filed an opposition memorandum.[5] Aramark filed a reply memorandum.[6] For the reasons stated below, the Motion will be DENIED.

---

[1] Expert Report of EAG Laboratories (Kumar Report) at 5, docket no. 158-4.

[2] *Id*.

[3] Expert Report of Spectrum Forensics (Finochiarro and Cornelissen Report) at 64, docket no. 158-2.

[4] Aramark Sports & Entertainment Services, LLC's Motion to Exclude Expert Testimony of Plaintiffs' Expert Bastiaan Cornelissen (Motion), docket no. 158, filed Oct. 13, 2020.

[5] Plaintiffs' Response Opposing Aramark Sports and Entertainment Services, LLC's Motion to Exclude Expert Testimony of Plaintiffs' Expert Bastiaan Cornelissen (Opposition), docket no. 169, filed Oct. 27, 2020.

[6] Reply Memorandum in Support of Aramark Sports and Entertainment Services, LLC's Motion to Exclude Expert Testimony of Plaintiffs' Expert Bastiaan Cornelissen (Reply), docket no. 175, filed Nov. 10, 2020.

# DISCUSSION

## Standard of review for the admissibility of expert testimony

Federal Rule of Evidence 702 addresses the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[7]

The district court is tasked with the responsibility of serving as the gatekeeper of expert testimony.[8] It has "broad latitude" in deciding "how to determine reliability" and in making the "ultimate reliability determination."[9]

The Federal Rules of Evidence generally favor the admissibility of expert testimony: "the rejection of expert testimony is the exception rather than the rule."[10] Often times the appropriate means of attacking shaky but admissible expert testimony is through "[v]igorous cross-examination [and the] presentation of contrary evidence."[11] Thus, the district "court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[12]

---

[7] FED. R. EVID. 702.

[8] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

[9] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

[10] FED. R. EVID. 702 Advisory Committee Notes; *Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014).

[11] *Daubert*, 509 U.S. at 596.

[12] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty, State of Miss*, 80 F.3d 1074, 1078 (5th Cir. 1996).

However, "[t]o say this is not to deny the importance of [the] gatekeeping requirement."[13] "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."[14] "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."[15] "It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[16] And "it is the specific relation between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute . . . that renders [expert] testimony both reliable and relevant."[17]

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."[18] "In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[19] "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."[20]

---

[13] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[14] *Daubert*, 509 U.S. 595 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

[15] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[16] *Id*.

[17] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005).

[18] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

[19] *Id*. (quoting FED. R. EVID. 702).

[20] *Id*.

### Mr. Cornelissen's opinion will not be excluded

Mr. Cornelissen is responsible for the following sections of the Finochiarro and Cornelissen Report:

- "The Presence of Calcium on the Fracture Surface Does Not Support the Conclusion that the Fuel Hose Drain Fitting Remained in Place Until the Time of the Explosion."
- "Calcium is Ubiquitous on Fuel System Components and in the Environment."
- "EDS Analysis is a Semi-Quantitative Technique and Does Not Provide Information Regarding Quantities of Elements."[21]

His opinions are summarized in Opinion 6 in the "Conclusions" section:

> [T]here is no scientific basis to infer from the presence of calcium-bearing deposits on the facture surface of the fuel drain that the fractured fitting remained in place in the hull until the time of the explosion."[22]

Aramark contends that Mr. Cornelissen's opinion should be excluded from trial pursuant to Rule 702 because it: (1) is unsupported by the methods and standards accepted within the scientific community in its use of the terms "amounts" and "concentrations"; and (2) incorrectly assumes that Dr. Kumar's observations and analysis are based solely on EDS testing, without any other visual analysis.[23]

*"Amounts" and "concentrations"*

Dr. Kumar relies on EDS testing to compare the "amounts" of calcium and silicon found on various components on the houseboat to determine the location of the fractured fitting at the time of the explosion.[24] According to Mr. Cornelissen, Dr. Kumar's analysis is invalid because

---

[21] Opposition at 7.

[22] Finocchiaro and Cornelissen Report at 64.

[23] Motion at 3.

[24] Kumar Report at 4-5.

EDS testing can only be used to determine the "concentrations" of certain deposits, not the "amounts."[25]

Aramark moves to exclude Mr. Cornelissen's opinion on the ground that there is no distinction between "amounts" and "concentrations" in the context of EDS testing. According to Aramark, these terms are synonymous and are used interchangeably within the scientific community, so Dr. Kumar's use of "amounts" rather than "concentrations" does not diminish the credibility of his opinion.[26]

Both sides cite examples from scientific literature in support of their respective positions. Aramark cites examples in which "amounts" and "concentrations" are used interchangeably in the context of EDS testing.[27] Plaintiffs cite examples in which they are used to mean different things.[28]

The scientific literature cited by the parties is inconclusive. Based on the evidence submitted by the parties, it cannot definitively be said that "amounts" and "concentrations" mean the same thing in the context of EDS testing. Accordingly, Mr. Cornelissen's opinion founded on the idea they mean different things is not necessarily flawed or scientifically unreliable. The Motion will not be granted on this ground.

*Other visual analysis*

Aramark contends Mr. Cornelissen's opinion incorrectly assumes that Dr. Kumar's observations and analysis are based solely on EDS testing, without any optical microscopy or

---

[25] Deposition of Baastian Cornelissen at 31:21-32:3.

[26] Motion at 3-5.

[27] *Id.*; Reply at 4.

[28] Opposition at 8-10.

other visual analysis.[29] While this may undermine the credibility of Mr. Cornelissen's opinion, it does not render his entire opinion so unreliable that it should be excluded from trial. Any failure by Mr. Cornelissen to address certain elements of Dr. Kumar's analysis may be addressed through cross-examination.

**ORDER**

For the reasons stated above, IT IS HEREBY ORDERED that the Motion is DENIED. Mr. Cornelissen will be permitted to testify to his opinions and the bases therefor described in the June 30, 2020 expert report he co-authored with Carl Finocciaro. Mr. Cornelissen's testimony will be limited in scope to his opinions contained in the following sections of the report:

- "The Presence of Calcium on the Fracture Surface Does Not Support the Conclusion that the Fuel Hose Drain Fitting Remained in Place Until the Time of the Explosion."
- "Calcium is Ubiquitous on Fuel System Components and in the Environment."
- "EDS Analysis is a Semi-Quantitative Technique and Does Not Provide Information Regarding Quantities of Elements."
- Opinion 6 in the "Summary of Opinions."

Signed April 13, 2021.

BY THE COURT

*David Nuffer* (signature)
David Nuffer
United States District Judge

---

[29] Motion at 5-7.