THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STACY MICKELSEN, KIRK R. MICKELSEN, and AMY V. BELLUM,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>ARAMARK SPORTS & ENTERTAINMENT SERVICES,<br><br>　　　　　　　Defendant,<br><br>and,<br><br>IN THE MATTER OF COMPLAINT OF SUMMER PARADISE, INC., ROGER COMSTOCK, TRACEE COMSTOCK, PRESTON MILLER, SANDY MILLER, BRIAN HORAN, KIM HORAN, DAVE DANIELS, BUD BULLARD, KRISTI BULLARD, CRAIG CURTIS, EARLYN CURTIS, DONALD BELLUM, STEVE MILLS, GREG PICKEREL, GINA PICKEREL, TROY SEYFER, GLENN LEWIS, REX ROLLO, NADINE ROLLO, STEVEN TYCKSEN, RUTH TYCKSEN, ROGER COOK, COLLEEN COOK, and KEVIN DANIELS as Owners or Owners Pro Hac Vice of a 2001 73-foot Stardust Houseboat "SUMMER PARADISE" for Exoneration from or Limitation of Liability,<br><br>　　　　　　　Petitioners. | **ORDER GRANTING MOTION TO EXCLUDE EXPERT OPINIONS OF MARC FAZIOLI**<br><br>Lead Case No. 4:18-cv-00072-DN-PK<br><br>Member Case No. 2:18-cv-00158 DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

　　　　This action consists of two consolidated cases arising from an explosion that occurred on the Summer Paradise houseboat in July 2017 resulting in the tragic death of one occupant and severe injuries to several others. The lead case is a negligence action by injured houseboat occupants ("Plaintiffs") against defendant Aramark Sports & Entertainment Services

("Aramark"). The member case is an action brought by the owners of the Summer Paradise houseboat ("Petitioners") to limit their liability for the damages caused by the explosion.

In an expert report dated November 29, 2019[1], Plaintiffs' expert Marc Fazioli offered the following opinions:

- Aramark "installed an inappropriate, non-marine grade generator fuse holder, less than one month before the explosion incident."[2]

- Aramark's Quality Assurance Agents and Marina Dockhands were not "included within the required periodic and random Department of Transportation (DOT) drug testing protocols for marine service crewmembers."[3]

- Aramark erred in not cleaning up, or investigating the source of, oily water in the Summer Paradise bilge.[4]

- Aramark had a duty to establish and enforce appropriate safety/operational policies and procedures on the Summer Paradise, and to ensure any repairs or modifications to the vessel were appropriate and compliant with applicable safety and operational regulations, including a duty to inspect the fuel vent and drain pan.[5]

Aramark has filed a motion to strike these opinions pursuant to Federal Rules of Evidence 702 and 403 (the "Motion").[6] Plaintiff filed an opposition memorandum.[7] Aramark filed a reply memorandum.[8]

---

[1] Expert Report of 3D Marine USA, Inc. (Fazioli Report), docket no. 159-1.

[2] *Id*. at 11.

[3] *Id*. at 10.

[4] *Id*. at 11.

[5] *Id*. at 13.

[6] Aramark Sports & Entertainment Services, LLC's Motion to Exclude Expert Opinions of Marc Fazioli, docket no. 159, filed Oct. 13, 2020.

[7] Plaintiffs' Response Opposing Aramark Sports & Entertainment Services, LLC's Motion to Exclude Expert Opinions of Marc Fazioli, docket no. 168, filed Oct. 27, 2020.

[8] Reply Memorandum in Support of Aramark Sports & Entertainment Services, LLC's Motion to Exclude Expert Opinions of Marc Fazioli, docket no. 176, filed Nov. 10, 2020.

# DISCUSSION

## Standard of review for the admissibility of expert testimony

Federal Rule of Evidence 702 addresses the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[9]

The district court is tasked with the responsibility of serving as the gatekeeper of expert testimony.[10] It has "broad latitude" in deciding "how to determine reliability" and in making the "ultimate reliability determination."[11]

The Federal Rules of Evidence generally favor the admissibility of expert testimony: "the rejection of expert testimony is the exception rather than the rule."[12] Often times the appropriate means of attacking shaky but admissible expert testimony is through "[v]igorous cross-examination [and the] presentation of contrary evidence."[13] Thus, the district "court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[14]

---

[9] FED. R. EVID. 702.

[10] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

[11] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

[12] FED. R. EVID. 702 Advisory Committee Notes; *Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014).

[13] *Daubert*, 509 U.S. at 596.

[14] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty, State of Miss*, 80 F.3d 1074, 1078 (5th Cir. 1996).

However, "[t]o say this is not to deny the importance of [the] gatekeeping requirement."[15] "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."[16] "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."[17] "It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[18] And "it is the specific relation between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute . . . that renders [expert] testimony both reliable and relevant."[19]

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."[20] "In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[21] "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."[22]

---

[15] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[16] *Daubert*, 509 U.S. 595 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

[17] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[18] *Id*.

[19] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005).

[20] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

[21] *Id*. (quoting FED. R. EVID. 702).

[22] *Id*.

Even if expert testimony is admissible under Rule 702, it may still be excluded under Rule 403.[23] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[24] "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case. To be *unfairly* prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[25] "Exclusion of relevant evidence under Rule 403 'is an extraordinary remedy and should be used sparingly.'"[26]

## Mr. Fazioli's opinion regarding the generator fuse holder will be excluded under Rule 403

Mr. Fazioli offers his opinion that Aramark "installed an inappropriate, non-marine grade generator fuse holder, less than one month before the explosion incident".[27]

This opinion will be excluded under Rule 403. It is not relevant. Neither Mr. Fazioli nor any other expert in the case has claimed that the fuse holder caused or contributed to the explosion. When asked at his deposition whether the fuse holder caused or contributed to the accident, Mr. Fazioli declined to offer an opinion because he was not a "cause and origin expert."[28] It is therefore not relevant whether Aramark installed a marine grade generator fuse holder or a non-marine grade one—it had nothing to do with the explosion at issue in this case. It may, however, create unfair prejudice by suggesting that Aramark's installation of a wrong

---

[23] *U.S. v. Call*, 129 F.3d 1402, 1404-05 (10th Cir. 1997).

[24] *U.S. v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quoting FED. R. EVID. 403 advisory committee note to 1972 proposed rules).

[25] *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1284 (10th Cir. 1994).

[26] *Id*.

[27] Fazioli Report at 11.

[28] Deposition of Marc Mr. Fazioli (Fazioli Dep.) at 69:4-71:2-3.

part—a fuse holder, a term which by its very nature conjures explosive images—caused the explosion. The danger of significant unfair prejudice outweighs the non-existent probative value, and Mr. Fazioli's fuse holder opinion will accordingly be excluded under Rule 403.[29]

Plaintiffs argue that Aramark's installation of the wrong fuse holder is relevant and admissible under Federal Rule of Evidence 406 because it evidences a habit or routine of Aramark for poor safety practices.[30] This argument is without merit. The installation of the wrong fuse holder was a one-time occurrence. By itself, it does not show a habit or routine.[31]

Plaintiffs further argue that if Aramark had addressed the installation of the wrong fuse holder, it would have somehow discovered the dangerous conditions that caused the explosion, and presumably fixed them and thereby prevented the explosion.[32] But Plaintiffs fail to explain how addressing the fuse holder issue would have led to the discovery of the dangerous conditions. If there is any expert testimony to that point, Plaintiffs failed to cite it.

In a related opinion offered at his deposition, Mr. Fazioli stated that the non-marine grade fuse holder created "an unsafe condition".[33] This opinion was offered without any factual or analytical support. An "unsafe condition" without a causation link to the explosion is irrelevant. Mr. Fazioli is not a cause and origin expert.[34] He accordingly is not qualified to offer the opinion that the fuse holder created an "unsafe condition." That opinion is excluded under Rule 702.

---

[29] To the extent that Mr. Fazioli offers the opinion that the fuse holder did play a role in the explosion, that opinion would be excluded under Rule 702 because Mr. Fazioli is not qualified to offer that opinion, and he did not provide any supporting analysis.

[30] Opposition at 6.

[31] *See Jones v. Southern Pacific Railroad*, 962 F.2d 447, 449 (5th Cir. 1992) (holding conductor's prior safety infractions were not admissible under Rule 406 to show the conductor had a habit of conducting trains negligently).

[32] Opposition at 6-7.

[33] Fazioli Dep. at 69:7-10.

[34] Fazioli Dep. at 71:2-12.

6

### Mr. Fazioli's opinion regarding the drug testing of Aramark employees will be excluded under Rule 403

Mr. Fazioli offers his opinion that Aramark's Quality Assurance Agents and Marina Dockhands were not "included within the required periodic and random Department of Transportation (DOT) drug testing protocols for marine service crewmembers."[35]

This opinion will be excluded under Rule 403. Whether Aramark properly tested its employees for drugs has no demonstrated connection to this case. There is no evidence that Armark's alleged failure to drug test its employees caused or contributed to the explosion, or that Aramark's employees were impaired while servicing the Summer Paradise. Nowhere in his report does Mr. Fazioli provide any factual or scientific support for the idea that drug-tested employees would have discovered, and fixed, the problem that caused the explosion. It is hard to imagine that anyone could offer sound testimony to that effect.

As such, Mr. Fazioli's opinion regarding Aramark's drug testing program has no probative value. It will in no way aid the jury in resolving a factual dispute. It may, however, create unfair prejudice by suggesting that the explosion would not have happened if only Aramark had drug tested its employees as required by law. There is no evidence that such a suspicion is true. The danger of significant unfair prejudice outweighs the non-existent probative value, and Mr. Fazioli's drug testing opinion will accordingly be excluded under Rule 403.

### Mr. Fazioli's opinion regarding the oily water in the bilge will be excluded under Rule 403

Mr. Fazioli offers his opinion that Aramark failed to clean up, or investigate the source of, oily water in the Summer Paradise bilge.[36] This opinion will be excluded under Rule 403.

---

[35] Fazioli Report at 10.

[36] *Id*. at 11.

There is no factual or scientific support for the idea that the oily water in the bilge had anything to do with the explosion. Indeed, as stated above, Mr. Fazioli testified at his deposition that he is not a cause and origin expert.[37] As such, his opinion regarding the oily water in the bilge has no probative value. It will in no way aid the jury in resolving a factual dispute. It may, however, create unfair prejudice by suggesting that Aramark allowed oily water—which could, without any evidence, be understood to be flammable due to the presence of oil—to be in the bilge, thereby contributing to the explosion. The danger of significant unfair prejudice outweighs the non-existent probative value, and Mr. Fazioli's opinion on this matter will be excluded under Rule 403.

### Mr. Fazioli's opinion regarding Aramark's duty to inspect will be excluded under Rule 702

Mr. Fazioli offers the opinion that Aramark had a duty to establish and enforce appropriate safety/operational policies and procedures on the Summer Paradise, and to ensure that any repairs/modifications were appropriate and in compliance with applicable safety and operational regulations.[38] More specifically, Mr. Fazioli states that Aramark had a duty to inspect the fuel vent and drain pan on the Summer Paradise.[39]

There is no reliable basis for this opinion. Mr. Fazioli does not cite any contractual language between the parties that might impose such a duty, nor does he cite any industry standard.

Rather, Mr. Fazioli testified at his deposition that his conclusions regarding Aramark's inspection obligations are based primarily on his personal experience with houseboats, and his

---

[37] Fazioli Dep. at 71:2-12.

[38] *Id*. at 13.

[39] *Id*. at 10-11.

general career in the marine industry.[40] However, Mr. Fazioli did not explain how that experience contributed to his opinion. General experience with boats, without more, is not a sufficiently reliable basis for the opinion that Aramark had a duty to inspect the fuel vents and drain pans on the Summer Paradise.[41]

Mr. Fazioli does cite Title 33 of the Code of Federal Regulations relating to navigation and navigable waters to support his opinion. The cited regulations, however, do not impose any obligations on boat operators or mechanics like Aramark. The obligations in 33 CFR § 183.564 apply to boat **manufacturers**, 33 CFR § 177.07 defines the term unsafe condition, and 33 CFR § 183.610 specified the type of ventilation system that should be installed in a compartment with a gas engine. None of the regulations impose an obligation on boat operators or mechanics to inspect fuel tank vents or drain pans.

As there is no reliable support for Fazioli's opinions that Aramark had an obligation to inspect or observe the fuel tank vents and drain pan of the Summer Paradise, these opinions are excluded under Rule 702.

---

[40] Fazioli Dep. 132:13-18.

[41] *See Latham v. Bd. of Educ. of Albuquerque Pub. Sch.*, No. 09 CV 0643 MV/ACT, 2011 WL 13266813, at *3 (D.N.M. Mar. 29, 2011) (excluding expert testimony where expert failed to explain how her experience with service dogs contributed to her opinion that some dogs can naturally begin to alert to asthma attacks).

## ORDER

For the reasons stated above, IT IS HEREBY ORDERED that the Motion is GRANTED.

The following expert opinions and testimony of Mr. Fazioli are excluded from trial:

- Aramark "installed an inappropriate, non-marine grade generator fuse holder, less than one month before the explosion incident."[42]

- Aramark's Quality Assurance Agents and Marina Dockhands were not "included within the required periodic and random Department of Transportation (DOT) drug testing protocols for marine service crewmembers."[43]

- Aramark erred in not cleaning up, or investigating the source of, oily water in the bilge.[44]

- Aramark had a duty to establish and enforce appropriate safety/operational policies and procedures on the Summer Paradise, and to ensure any repairs or modifications to the vessel were appropriate and compliant with applicable safety and operational regulations, including a duty to inspect the fuel vent and drain pan.[45]

Signed April 13, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[42] Fazioli Report at 11.

[43] *Id*. at 10.

[44] *Id*. at 11.

[45] *Id*. at 13.