THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STACY MICKELSEN, KIRK R. MICKELSEN and AMY V. BELLUM, <br><br>          Plaintiffs, <br><br>v. <br><br>ARAMARK SPORTS & ENTERTAINMENT SERVICES, <br><br>          Defendant, <br><br>and, <br><br>IN THE MATTER OF COMPLAINT OF SUMMER PARADISE, INC., ROGER COMSTOCK, TRACEE COMSTOCK, PRESTON MILLER, SANDY MILLER, BRIAN HORAN, KIM HORAN, DAVE DANIELS, BUD BULLARD, KRISTI BULLARD, CRAIG CURTIS, EARLYN CURTIS, DONALD BELLUM, STEVE MILLS, GREG PICKEREL, GINA PICKEREL, TROY SEYFER, GLENN LEWIS, REX ROLLO, NADINE ROLLO, STEVEN TYCKSEN, RUTH TYCKSEN, ROGER COOK, COLLEEN COOK, and KEVIN DANIELS as Owners or Owners Pro Hac Vice of a 2001 73-foot Stardust Houseboat "SUMMER PARADISE" for Exoneration from or Limitation of Liability, <br><br>          Petitioners. | **MEMORANDUM DECISION AND ORDER OVERRULING [214] OBJECTION TO TRIAL LOCATION AND PROTOCOLS** <br><br>Lead Case No. 4:18-cv-00072-DN-PK <br><br>Member Case No. 2:18-cv-00158-DN <br><br>District Judge David Nuffer <br>Magistrate Judge Paul Kohler |

Aramark Sports and Entertainment Services, LLC dba Lake Powell Resorts and Marinas

("Aramark") made preliminary objections[1] to the proposed protocol and location of the June jury

trial setting in the negligence action, 4:18-cv-00072-DN-PK. The objections are a thoughtful and

---

[1] Aramark Sports and Entertainment Services, LLC's Preliminary Objections to Proposed Protocol and Location for June Jury Trial ("Objections"), docket no. 214, filed April 16, 2021.

detailed critique of holding a trial in the current COVID-19 conditions. The objections reflect the many considerations balanced in the various orders and communications from the court regarding the trial setting and location, including:

- Trial Order, docket no. 207, filed April 13, 2021, now superseded by Amended Trial Order, docket no. 218, filed April 21, 2021;

- COVID-19 Trial Order Addendum, docket no. 207, filed April 13, 2021;

- Supplemental Trial Order for Virtual Jury Voir Dire (counsel in courtroom), docket no. 210, filed April 15, 2021; and

- Email, April 16, 2021, to counsel regarding trial room layouts, docket no. 231, lodged April 27, 2021.

In summary, this trial which has been set previously for September 2020[2] and March 15, 2021[3] is now set for June 7, 2021,[4] under COVID-19 conditions and with virtual jury selection, at the University of Utah S. J. Quinney School of Law. The 15-20 day jury trial is followed by a companion bench trial in July 2021. COVID-19 is unusual. Virtual jury selection is unusual. Holding a trial outside a courthouse is unusual.

All parties agree the case seeks compensation for tragic events, resulting in one death and injuries to several others on a houseboat on Lake Powell in July 2017. "This case will likely take approximately 16 trial days to complete, require testimony from over 50 witnesses and 9 experts, and be attended daily by nearly two dozen counsel, parties, party representatives, and witnesses, plus court personnel and jurors."[5] The parties earlier estimated that twenty counsel, support staff and party representatives would be present. Ten jurors will be selected. Eight to ten court staff would be present. In sum, about forty persons must attend this trial.

---

[2] Scheduling Order, docket no. 30, filed March 7, 2019;

[3] Order Granting Joint Stipulated Motion to Amend Scheduling Order, docket no. 148, filed September 24, 2020.

[4] Amended Scheduling Order, docket no. 189, filed January 11, 2021.

[5] Objections at 2.

Reserving "the right to amend [its preliminary] objections and raise additional objections," Aramark objects because:

**The trial is outside a courthouse.**[6] A trial with this many participants cannot be safely conducted in a courtroom with physical distancing required to safely conduct a trial while COVID-19 is still prevalent. This objection is essentially a request that the trial not take place until the pandemic is entirely abated. No one can predict when COVID-19 risk will be eliminated, due to the many variables, such as vaccination percentages in the population, variants of COVID-19, and public non-compliance with health guidance. The only safe way to conduct this trial at this time, or the foreseeable future, is as outlined in the COVID-19 Trial Order Addendum which include:

- properly worn face masks;
- Plexiglas™ barriers (when available and needed due to proximity or lack of masking);
- increased air circulation and outside air mix;
- physical distancing of six feet at all times;
- regular surface cleaning,
- hand sanitizer,
- no items, including exhibits, will be passed to court staff, parties, witnesses, or jurors;
- meals brought in for jurors,
- restrictions on social activities between trial days;
- trial participant health questionnaires;
- temperature screening (when available); and
- rapid testing (when available).

As discussed later, Aramark's motion is essentially for an indefinite continuance.

**Aramark needs "an opportunity to physically inspect the proposed location with the proposed layout."**[7] The parties have received a diagram of the layout for trial and a photo of the trial location.[8] The parties will have an opportunity to inspect the trial location on May 7, 2021,

---

[6] *Id.* at 4.

[7] *Id.* at 5.

[8] Email, April 16, 2021, to counsel regarding trial room layouts, docket no. 231, lodged April 27, 2021.

at 2:00 p.m. Details will be given when final arrangements are made. The trial location will not, however, be set up in trial layout at that early date but the trial location will be arranged on the date of the virtual voir dire on June 4, 2021.

The trial location (including social distancing) may "impinge in-person attendance at trial by LPRM's representatives and the public."[9] Any trial in these times restricts physical access to the essential parties. But trial access can be improved by video and audio streaming. The court is making efforts to arrange streaming. Streaming may also reduce travel needs for some witnesses or participants.

The trial is being held under COVID-19 conditions but the "anticipated trial practices conflict with local public health orders and CDC guidance."[10] The District of Utah Petit Jury Trial Plan was developed with the review of the Salt Lake County Health Department. Because the District of Utah Petit Jury Trial Plan allows the judge, interrogating counsel, and an active witness not to wear a mask, local orders requiring mask wearing will not be observed for testifying witnesses and examining counsel. (The judge in this trial will always wear a mask.) This is consistent with public conferences of health and government leaders throughout the pandemic where critical messages are delivered without masks.

Also, because the trial room will seat about forty people, local orders about group size limitations will be violated but the six foot spacing of forty people in a 4,500 square foot room with 100% fresh air ventilation does not violate the principles of the health orders. The large rooms at the University of Utah S. J. Quinney School of Law are possibly the safest place in the United States to hold a trial. And the limited removal of masks by examining attorneys and

---

[9] Objections at 6.

[10] *Id.* at 5.

active witnesses may be mitigated by face shields, plexiglass barriers, and small HEPA filtration units.

**The COVID-19 jury questionnaire proposed by the court asking about mask wearing and social distancing may "affect the political makeup of the [jury] panel."**[11] The purpose of the jury questionnaire is to determine who has a genuine safety concern and should be excluded from the panel for their own protection or who presents a safety risk and should be excluded for the protection of others. Jurors are regularly asked questions regarding sensitive issues that may arise during trial and whether they will follow the law as instructed, which may also secondarily implicate political views, but these questions, like the health questions, are justified by the circumstances.

**Questions for jurors about recent positive COVID-19 tests, symptoms or suspicions of infection, and close contact with someone who is suspected to have COVID-19 may "affect the racial makeup of the panel" due to "COVID-19's disproportionate effect on communities of color . . . ."**[12] The regrettably higher impact of COVID-19 on communities of color is very real. And it may be that these questions would have an incidental impact on jurors from those communities. But the racial impact is not yet shown and is certainly not intended.

**"Masks will make it impossible for counsel to observe the jury and for the jury to observe parties and counsel outside of the limited time of actual examination."**[13] In light of the large number of trials, including the recent high-profile jury trial in Minnesota,[14] conducted

---

[11] *Id.* at 7.

[12] *Id.*

[13] *Id.* at 6.

[14] How COVID will make Derek Chauvin's trial in George Floyd's death look like no other - ABC News (go.com) https://abcnews.go.com/US/pandemic-looms-derek-chauvins-trial-george-floyds-death/story?id=76395755 (last visited April 21, 2021).

with masks and distance and barriers, and without any empirical evidence, this objection is not well supported by fact or experience. The principal communicators – examining attorneys and testifying witnesses – can be observed. During virtual voir dire, jurors at remote locations do not need to wear masks, so counsel can get to know the jury panel.

**"[T]here is a risk that jurors will be distracted by the COVID-19 health and safety protocols and fear for their own health and the health of their families."**[15] There is no question that COVID-19 causes stress. But justice has moved ahead with in person sentencings, in person hearings, and video hearings (which involve movement of prisoners from cells. By now, most of us are so used to the prevalence of COVID-19 that it is a new normal, not a distraction.

**"If a member of the jury, court staff, counsel, or a party tests positive for COVID-19, there is a high likelihood that other trial participants would have to self-isolate, causing a mistrial."**[16] With adequate precautions, this risk can be managed. Other trials in civil and criminal cases are ongoing under these conditions, and interruptions due to infection or risk of infection are not the norm. Alternate jurors will be selected. And the court will, and the parties should, be prepared in the event extra or replacement staff is needed.

**"[Aramark] reiterates and renews its objection to the trial being held outside of St. George, and to the jury panel being drawn from outside of the Southern Region."**[17] The usual location for trials in the court's Southern Region is St. George, and many juries are drawn from the Southern Region. However, the State courthouse in St. George (which houses the federal courtroom) is not open; the Southern Utah counties are still at high transmission risk; and

---

[15] Objections at 8.

[16] *Id.*

[17] *Id.* at 2.

the courtroom could not accommodate a trial this size regardless of the COVID-19 pandemic. An alternative site was explored but the costs of travel for Plaintiffs' witnesses, including experts was prohibitively high, in part because of reduced air service to the area as a result of COVID-19. Nothing in any court document declares that this trial must be held in St. George or that the jury must be drawn from the Southern Region. The court's General Orders give leeway for independent decisions for Southern Region cases.[18] While previous trial settings were in St. George, current information on the size of those attending this trial makes that impossible. Under COVID-19 conditions, the St. George coutroom can accommodate six counsel and parties; ten jurors; four court staff; two security officers; and three other persons. That is about half the number who need to attend this trial.

COVID-19 conditions require the trial be held in Salt Lake City, outside the courthouse, with a jury drawn from the area least likely to require distant and overnight travel.

### ORDER

After careful consideration, Aramark's objections[19] are OVERRULED.

SIGNED this 27th day of April, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[18] "As the resident United States District Judge in St. George, Judge David Nuffer is granted emergency authority to promulgate rules and procedures for Southern Region proceedings . . . ." General Order 21-003, Court Proceedings and Court Operations During the Coronavirus (COVID-19) Pandemic, ¶ 14.

[19] Docket no. 214, filed April 16, 2021.