THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STACY MICKELSEN, KIRK R. MICKELSEN, and AMY V. BELLUM,<br><br>     Plaintiffs,<br><br>v.<br><br>ARAMARK SPORTS & ENTERTAINMENT SERVICES,<br><br>     Defendant,<br><br>and,<br><br>IN THE MATTER OF COMPLAINT OF SUMMER PARADISE, INC., ROGER COMSTOCK, TRACEE COMSTOCK, PRESTON MILLER, SANDY MILLER, BRIAN HORAN, KIM HORAN, DAVE DANIELS, BUD BULLARD, KRISTI BULLARD, CRAIG CURTIS, EARLYN CURTIS, DONALD BELLUM, STEVE MILLS, GREG PICKEREL, GINA PICKEREL, TROY SEYFER, GLENN LEWIS, REX ROLLO, NADINE ROLLO, STEVEN TYCKSEN, RUTH TYCKSEN, ROGER COOK, COLLEEN COOK, and KEVIN DANIELS as Owners or Owners Pro Hac Vice of a 2001 73-foot Stardust Houseboat "SUMMER PARADISE" for Exoneration from or Limitation of Liability,<br><br>     Petitioners. | **CORRECTED[1] MEMORANDUM DECISION AND ORDER DENYING MOTION TO EXCLUDE EXPERT TESTIMONY OF CARL FINOCCHIARO**<br><br>Lead Case No. 4:18-cv-00072-DN-PK<br><br>Member Case No. 2:18-cv-00158-DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

   This action consists of two consolidated cases arising from an explosion that occurred on

the Summer Paradise houseboat in July 2017 resulting in the tragic death of one occupant and

---

[1] An error in the prior version of this document, docket no. 222, filed April 23, 2021, is corrected by amendment on page 7 in response to Plaintiffs' Motion for Clarification of Order Denying Motion to Exclude Testimony of Carl Finocchiaro, docket no. 224, filed April 23, 2021.

severe injuries to several others. The lead case is a negligence action by injured houseboat occupants ("Plaintiffs") against defendant Aramark Sports & Entertainment Services ("Aramark"). The member case is an action brought by the owners of the Summer Paradise houseboat ("Petitioners") to limit their liability for the damages caused by the explosion.

In an expert report dated June 30, 2020, Plaintiffs' expert Carl Finocchiaro stated his opinion that the "most probable" explanation for the explosion is that a gasoline drain line detached from the hull and spilled gasoline into the engine compartment, which evaporated into gasoline vapor and ignited (referred to by Mr. Finocchiaro as "Scenario 3"):

> Scenario 3 - Gasoline Flowing from Drain Line. Under this scenario, the end of the gasoline drain line, which was found post incident in the engine compartment, allowed gasoline that had splashed into the containment drain pan during refueling to flow directly into the engine compartment. The gasoline subsequently evaporated and formed gasoline vapor under this scenario.[2, 3]

Aramark has filed a motion to exclude this opinion pursuant to Federal Rules of Evidence 702 and 403 (the "Motion").[4] Plaintiffs filed an opposition memorandum.[5] Aramark filed a reply memorandum.[6]

---

[2] Spectrum Forensics, Supplemental Expert Report, June 30, 2020 ("Spectrum Report"), docket no. 161-1.

[3] Mr. Finocchiaro also gives his opinion that Scenario 1 (displaced gasoline vapor from the re-fueling process) did not cause the explosion, and Scenario 2 (gasoline leaking through the scupper pan into the engine compartment) likely did not cause the explosion. Spectrum Report at 2. Aramark does not seek to exclude those opinions.

[4] Aramark Sports & Entertainment Services, LLC's Motion to Exclude Expert Testimony of Plaintiffs' Expert Carl Finocchiaro, docket no. 161, filed Oct. 13, 2020.

[5] Plaintiffs' Response Opposing Aramark Sports & Entertainment Services, LLC's Motion to Exclude Expert Testimony of Plaintiffs' Expert Carl Finocchiaro, docket no. 170, filed Oct. 27, 2020.

[6] Reply Memorandum in Support of Aramark Sports & Entertainment Services, LLC's Motion to Exclude Expert Testimony of Plaintiffs' Expert Carl Finocchiaro, docket no. 174, filed Nov. 10, 2020.

## DISCUSSION

### Standard of review for the admissibility of expert testimony

Federal Rule of Evidence 702 addresses the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[7]

The district court is tasked with the responsibility of serving as the gatekeeper of expert testimony.[8] It has "broad latitude" in deciding "how to determine reliability" and in making the "ultimate reliability determination."[9]

The Federal Rules of Evidence generally favor the admissibility of expert testimony: "the rejection of expert testimony is the exception rather than the rule."[10] Often times the appropriate means of attacking shaky but admissible expert testimony is through "[v]igorous cross-examination [and the] presentation of contrary evidence."[11] Thus, the district "court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[12]

---

[7] Fed. R. Evid. 702.

[8] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

[9] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

[10] Fed. R. Evid. 702 Advisory Committee Notes; *Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014).

[11] *Daubert*, 509 U.S. at 596.

[12] *United States v. 14.38 Acres of Land, More or Less Situated in* Leflore Cty, State of Miss, 80 F.3d 1074, 1078 (5th Cir. 1996).

However, "[t]o say this is not to deny the importance of [the] gatekeeping requirement."[13] "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."[14] "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."[15] "It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[16] And "it is the specific relation between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute . . . that renders [expert] testimony both reliable and relevant."[17]

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."[18] "In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[19] "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."[20]

---

[13] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[14] *Daubert*, 509 U.S. 595 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

[15] *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152.

[16] *Id.*

[17] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005).

[18] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

[19] *Id.* (quoting Fed. R. Evid. 702).

[20] *Id.*

Even if expert testimony is admissible under Rule 702, it may still be excluded under Rule 403.[21] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[22] "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case. To be *unfairly* prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[23] "Exclusion of relevant evidence under Rule 403 'is an extraordinary remedy and should be used sparingly.'"[24]

## Mr. Finocchiaro's opinion is admissible under Rule 702

Aramark moves to exclude under Rule 702 Mr. Finocchiaro's opinion on the cause and origin of the explosion. Aramark contends that Mr. Finocchiaro's opinion is unreliable because he did not follow the methodology set out in the National Fire Protection Association's Guide for Fire and Explosion Investigations—known as NFPA 921. First, according to Aramark, Mr. Finocchiaro failed to test his explosion hypothesis. Second, he accepted evidence that fit his hypothesis and ignored conflicting evidence.[25]

### *The lack of physical testing does not make Mr. Finocchiaro's opinion unreliable*

NFPA 921 requires an investigator to collect data, analyze the data, develop hypotheses, and—"most importantly"—test the hypotheses before selecting a final hypothesis.[26] Each

---

[21] *U.S. v. Call*, 129 F.3d 1402, 1404-05 (10th Cir. 1997).

[22] *U.S. v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quoting FED. R. EVID. 403 advisory committee note to 1972 proposed rules).

[23] *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1284 (10th Cir. 1994).

[24] *Id*.

[25] Motion at 2.

[26] NFPA 921, §§ 4.3.6, 4.4, 18.2, 19.2, 19.6.2.

alternative hypothesis must be tested using the scientific method.[27] Testing can take many forms, including "application of fundamental principles of science, physical experiments or testing, cognitive experiments, analytical techniques and tools, and systems analysis."[28] Mr. Finocchiaro acknowledges the importance of testing hypotheses in his report: "In accordance with the principles of the scientific method, hypotheses must be 'tested' by experimental or logical means to determine if any facts are incompatible with a particular hypothesis. If so, the hypothesis must either be modified or rejected outright."[29]

Mr. Finocchiaro's "Scenario 3" hypothesis is founded on the premise that an explosive amount of gasoline vapor evaporated from a gasoline puddle in the engine compartment in the interval of time between the bilge blowers stopping and the final attempt to re-start the generator.[30] Aramark contends that Mr. Finocchiaro did not test whether the spilled gasoline could have evaporated that quickly, and his opinion that the gasoline did evaporate that quickly and caused the explosion is mere speculation.[31]

Mr. Finocchiaro responds that he could not have conducted physical tests on his hypothesis because there were unknown variables, including the surface area of the gasoline puddle and the time interval between the turning off of the blowers and the final attempt to re-start the generator.[32] Aramark does not dispute that there are unknown variables, but contends that if Mr. Finocchiaro was unable to test his hypothesis due to unknown variables, he should

---

[27] *Id.*, § 19.6.

[28] *Id.*

[29] Spectrum Report at 2.

[30] *Id*.

[31] Motion at 4-6.

[32] Deposition of Carl Finocchiaro at 153:10-154:18; 149:8-21.

have disqualified it under NFPA 921, which states "[a]ny hypothesis that is incapable of being tested physically or analytically is an invalid hypothesis."[33]

Mr. Finocchiaro's opinion is admissible under Rule 702. Aramark correctly points out that NFPA 921 requires the testing of hypotheses. But that testing can take different forms. "Physical experiments or testing" is one option.[34] Other options include "application of fundamental principles of science" and "analytical techniques."[35] Thus, Mr. Finocchiaro was not required by NFPA 921 to run physical tests on his explosion hypothesis. Rather than run physical tests, Mr. Finocchiaro based his opinion on "fundamental principles of science" and "analytical techniques." That approach is expressly permitted by NFPA 921.[36]

Mr. Finocchiaro's analysis starts with the premise that the explosion was caused by gasoline vapor in the houseboat's engine compartment. The parties are in general agreement on that point. Three hypotheses have been proposed to explain how the gasoline vapor came to be in the engine compartment. Mr. Finocchiaro ruled out the first hypothesis (vapor displacement from the re-fueling process) by physical testing. As to the second hypothesis, Hhe likewise ruled outfound by physical testing that the leaky scupper pan likely contributed some fuel to the explosion, but likely not enough to be the sole source of fuel. the second hypothesis (leaky scupper pan) by physical testing. By process of elimination, Mr. Finocchiaro settled on the third hypothesis as the cause of the explosion.[37, 38]

---

[33] Motion at 5.

[34] NFPA 921, § 19.6.4.

[35] *Id*.

[36] *Id*.

[37] Spectrum Report at 2-6.

[38] *See* NFPA 19.6.5 ("The process of elimination is an integral part of the scientific method."); *Bitler*, 400 F.3d at 1237-38 (allowing expert opinion based on "process of eliminating possible causes as improbable until the most

Aramark contends that Mr. Finocchiaro should have subjected the third hypothesis to physical testing as he did the first two hypotheses. As discussed above, however, NFPA 921 does not require an opinion to be supported by physical testing.[39] Mr. Finocchiaro determined that physical testing was not possible in view of the unknown variables.[40]

And Rule 702 does not require physical testing. The cases cited by Aramark on the testing requirement are distinguishable. In *Werth v. Hill-Rom, Inc.*[41], the expert's causation theory was not supported by fundamental principles of science, which increased the importance of physical testing in that case. Mr. Finocchiaro's causation theory is supported by fundamental principles of science—gasoline is a volatile substance and evaporates quickly into explosive vapor. In *Atlantic Specialty Ins. Co. v. Porter, Inc.*,[42] the expert was able to test his theory, but failed to do so. That is not the case here.

This case is more similar to *Bitler v. A.O. Smith Corp.*[43]. In *Bitler*, the defendant argued that the opinion submitted by plaintiff's expert regarding the cause of an explosion was impermissible speculation because the expert failed to conduct physical testing of his theory. The district court rejected defendant's argument and admitted the expert testimony into evidence. The 10th Circuit affirmed. The lack of physical testing was not grounds for exclusion because "the need for testing [was] not at its highest" due to "the reliability of the science of copper sulfide

---

likely one is identified"); *Kilgore v. Reckitt Benckiser, Inc.*, 917 F.Supp.2d 1288, 1295 (N.D. Ga. 2013) ("Process of elimination can be a reliable method for determining the cause of a fire.")

[39] NFPA 921, § 19.6.4.

[40] Finocchiaro Dep. at 115:9-116:15; 135:1-137:7; 149:8-21; 153:10-154:18; 173:4-174:10. Aramark cites NFPA 921 4.3.6.1 for the proposition that "Any hypothesis that is incapable of being tested physically or analytically is an invalid hypothesis". Finocchiaro did test his hypothesis analytically.

[41] 856 F.Supp.2d 1051 (D. Minn. 2012).

[42] 742 Fed. Appx. 850 (5th Cir. 2018).

[43] 400 F.3d 1227 (10th Cir. 2005).

contamination."[44] Similarly, the need for physical testing of Mr. Finocchiaro's hypothesis is less because of the reliability of the scientific principles regarding gasoline evaporation.

### *Mr. Finocchiaro adequately addressed the conflicting evidence*

Aramark contends that Mr. Finocchiaro's opinion is unreliable because it accepts as true the evidence that the houseboat occupants ran the bilge blowers to expel gas vapors from the engine compartment in the moments before the explosion, while ignoring the evidence that the blowers were not run.[45]

NFPA 921 permits an investigator to include witness statements in the analysis, and to evaluate the credibility of those statements.[46] It is understood that an investigator may be presented with inconsistent witness statements which will need to be "recognized and resolved."[47] Mr. Finocchiaro did that here. He considered the evidence on both sides of the blower question, including statements from witnesses Greig Bellum and Kirk Mickelsen, and concluded "the bilge blower was operating during some, if not all, of the period of time that attempts were made to start the generator."[48] That conclusion is objectively reasonable in view of the available data. Mr. Finocchiaro described the applicable witness statements in his report and resolved the inconsistencies in a reasonable way. Aramark may disagree with the results of Mr. Finocchiaro's analysis, but that does not render his opinion unreliable.

---

[44] *Id.* at 1235-36.

[45] Motion at 6-9.

[46] NFPA 921 § 4.3.3; § 14.1.2; Figure 18.2.

[47] NFPA 921 § 19.7.2.

[48] Spectrum Report at 3-4.

**Mr. Finocchiaro's opinion will not be excluded under Rule 403**

Aramark contends that Mr. Finocchiaro's opinion should be excluded under Rule 403 as misleading to the jury because it appears to confirm, rather than assume, that the blowers were running in the moments before the explosion.[49] As discussed above, Mr. Finocchiaro considered the evidence and assumed for purposes of his analysis that the blowers were running in the moments before the explosion. That is not a "confirmation" that the blowers were running, nor is it an improper burnishment of the witness testimony provided by Greig Bellum and Kirk Mickelsen. If Aramark is concerned the jury may be misled, it may clarify during its cross-examination of Mr. Finocchiaro that his opinion is based on assumptions he has made following evaluation of the available data.

## ORDER

For the reasons stated above, IT IS HEREBY ORDERED that the Motion[50] is DENIED.

Signed April 28, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[49] Motion at 9-10.

[50] Docket no. 161, filed Oct. 13, 2020.