THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STACY MICKELSEN, KIRK R. MICKELSEN, and AMY V. BELLUM,<br><br>Plaintiffs,<br><br>v.<br><br>ARAMARK SPORTS & ENTERTAINMENT SERVICES,<br><br>Defendant,<br><br>and,<br><br>IN THE MATTER OF COMPLAINT OF SUMMER PARADISE, INC., ROGER COMSTOCK, TRACEE COMSTOCK, PRESTON MILLER, SANDY MILLER, BRIAN HORAN, KIM HORAN, DAVE DANIELS, BUD BULLARD, KRISTI BULLARD, CRAIG CURTIS, EARLYN CURTIS, DONALD BELLUM, STEVE MILLS, GREG PICKEREL, GINA PICKEREL, TROY SEYFER, GLENN LEWIS, REX ROLLO, NADINE ROLLO, STEVEN TYCKSEN, RUTH TYCKSEN, ROGER COOK, COLLEEN COOK, and KEVIN DANIELS as Owners or Owners Pro Hac Vice of a 2001 73-foot Stardust Houseboat "SUMMER PARADISE" for Exoneration from or Limitation of Liability,<br><br>Petitioners. | MEMORANDUM DECISION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO STRIKE EXPERT REBUTTAL REPORT OF WENDY SANDERS<br><br>Lead Case No. 4:18-cv-00072-DN-PK<br><br>Member Case No. 2:18-cv-00158-DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This action consists of two consolidated cases arising from an explosion that occurred on the Summer Paradise houseboat in July 2017 resulting in the tragic death of one occupant and severe injuries to several others. The lead case is a negligence action by injured houseboat occupants ("Plaintiffs") against defendant Aramark Sports & Entertainment Services

("Aramark"). The member case is an action brought by the owners of the Summer Paradise houseboat ("Petitioners") to limit their liability for the damages caused by the explosion.

Plaintiffs have filed a motion to strike a report dated August 8, 2020 from Aramark's expert Wendy Sanders as an unauthorized surrebuttal of a report dated June 30, 2020 from Plaintiffs' expert Carl Finocchiaro (the "Motion").[1]

## DISCUSSION

### Report Summaries

Mr. Finocchiaro produced an affirmative expert report dated December 3, 2019, in which he offered the following opinion regarding the cause of the houseboat explosion:

> Evaluation of the available evidence indicates that gasoline leaked into the engine compartment and created gasoline vapor that was ignited when an attempt was made to start the generator. This was the cause of the explosion. The gasoline that entered the engine compartment leaked from the drain pan during (and shortly after) the refilling of the fuel tanks. Two different leak paths from the drain pan to the engine compartment were identified:
>
> 1. Gasoline entered the drain hole, flowed through the rubber drain line and then flowed out of the end of the line, which was inside the engine compartment. This flowpath came into existence after the drain port was broken off the port side hull, which is undetermined at this time.
>
> 2. Gasoline that accumulated on the aft side of the drain pan leaked into the engine compartment via the 3 screw holes made during the modification. This flowpath came into existence when the access port was installed in 2010.[2]

For convenience, these will be referred herein to as the "drain line" and "drain pan" theories or hypotheses, respectively.

---

[1] Plaintiffs' Motion to Strike Expert Rebuttal Report of Wendy Sanders as Beyond Scope of Scheduling Order, docket no. 134, filed Aug. 31, 2020.

[2] Spectrum Forensics Report at 2-3, December 3, 2019, docket no. 138-1.

2

Aramark's expert, Wendy Sanders, produced an affirmative expert report dated December 3, 2019, in which she stated, among other things:

> The act of dispensing liquid fuel into the gas tank would displace an equal volume of vapors out of the head space of the tank. Those vapors would leave the tank primarily back through the deck fill (around the fill nozzle). The heavy gasoline vapors would naturally migrate to the lowest available station; in this case, the lowest point would be downward through the open starboard engine compartment hatch.[3]

For convenience, this will be referred to herein as the "vapor displacement" theory.

Ms. Sanders produced a rebuttal report to Mr. Finocchiaro's December 3 report on February 7, 2020.

On June 30, 2020, Mr. Finocchiaro produced a rebuttal report to Ms. Sanders' December 3 affirmative report.[4] In this June 30 report, Mr. Finocchiaro responded to Ms. Sanders' vapor displacement theory. In addition, however, Mr. Finocchiaro expanded on the opinions he gave in his December 3 affirmative report regarding the drain line and drain pan causation theories, going into significantly more detail than he did in his December 3 report.

Regarding the drain line theory, Mr. Finocchiaro added analysis regarding the bilge blower, which was not addressed in his December 3 report, and the impact its operation or non-operation may have had in creating an explosive environment, that is also absent from his December 3 report.[5] Regarding the drain pan theory, Mr. Finocchiaro added a discussion of tests run by AEGI (before December 3) on the flow rate of the gasoline leaking through the screw holes that is also absent from his December 3 report.[6]

---

[3] Explico Engineering December 3 Report at 31, docket no. 134-1.

[4] Spectrum Forensics Report, June 30, 2020, docket no. 134-2.

[5] *Id*. at 6.

[6] *Id*. at 5.

In a report dated August 8, 2020, Ms. Sanders addresses each of the three explosion hypotheses identified by the parties: vapor displacement; gasoline dripping at screw holes; and gasoline flowing from drain line.[7]

**Plaintiffs' Objection to the Sanders August 8 Report**

Plaintiffs contend in the Motion that Ms. Sanders' August 8 report is an unauthorized surrebuttal report to Mr. Finochiarro's June 30 rebuttal report, and should therefore be struck. For the reasons stated below, the portions of Ms. Sanders' August 8 report that address the vapor displacement theory will be struck. The remainder of Ms. Sanders' August 8 report will be allowed.

*Vapor displacement hypothesis*

Ms. Sanders states in her affirmative December 3 report that vapor displacement was the most likely cause of the explosion.[8] Mr. Finocchiaro critiqued Ms. Sanders' vapor displacement theory in his rebuttal June 30 report.[9] Ms. Sanders then produced her August 8 report, in which she responded at length to Mr. Finocchiaro's June 30 rebuttal of her vapor displacement theory.[10]

That response constitutes an unauthorized surrebuttal. The Federal Rules of Civil Procedure do not authorize surrebuttal reports. "Federal Rule 26(a)(2) permits affirmative expert disclosures and rebuttal expert disclosures; it does not permit parties to further rebut rebuttal expert disclosures."[11]

---

[7] Explico Engineering Report, Aug. 8, 2020, docket no. 134-3.

[8] Explico Engineering December 3 Report at 29.

[9] Spectrum June 30 Report at 4-5.

[10] Explico Engineering August 8 Report at 4-10.

[11] *Rothenberg v. Standard Ins. Co.*, No. 11-cv-01906-WYD-KMT, 2012 WL 2126846, at * 2 (D. Colo. June 12, 2012).

Aramark contends it was permitted a surrebuttal to Mr. Finocchiaro's June 30 report by a court order[12] relating to the re-opening of discovery for 60 days for the purpose of investigating the access panel cut in the houseboat.[13] In that order, the case schedule was modified to permit Aramark to produce a rebuttal report to any "new opinions" propounded by Mr. Finocchiaro's rebuttal report to Ms. Sanders' December 3 report, which was scheduled to be produced on June 15, 2020 (later moved to June 30).[14] The reason for giving Aramark that permission was to allow Aramark an opportunity to respond to any opinions advanced by Mr. Finocchiaro in his June 30 report that were based on new information obtained during the limited 60-day discovery period relating to the access panel cut.

Ms. Sanders' discussion of the vapor displacement theory in her August 8 report does not fall into that category. It is not a response to "new opinions" offered by Mr. Finocchiaro relating to the access panel cut, but rather a rebuttal to Mr. Finocchiaro's response to her vapor displacement theory.

Aramark further suggests that Mr. Finocchiaro was obligated to disclose his opinions regarding the vapor displacement theory in his affirmative report.[15] Rule 26(a)(2)(B) requires that an affirmative expert witness report "contain a complete statement of all opinions to be expressed and the basis and the reasons therefor."[16] Aramark has not produced any evidence that Mr. Finocchiaro had any opinions on the vapor displacement theory as of December 3, 2019.

---

[12] Order Granting Motion to Continue Existing Deadlines until LPRM's Motion to Reopen Fact Discovery is Determined, docket no. 87, filed April 14, 2020.

[13] Response and Opposition to Plaintiffs' Motion to Strike Rebuttal Report of Wendy Sanders at 2, 6-9, docket no. 138, filed Sept. 14, 2020.

[14] *Id*.

[15] Opposition at 8.

[16] Fed.R.Civ.P. 26(a)(2)(B).

Even if he did, the vapor displacement theory is Ms. Sanders' theory of explosion, not Mr. Finocchiaro's. Mr. Finocchiaro reasonably addressed his theories of explosion in his affirmative report, and waited to address Mr. Sanders' theory until his June 30 rebuttal report.

That portion of Ms. Sanders' August 8 report that pertains to the vapor displacement theory is an unauthorized surrebuttal, and will accordingly be stricken.

*Drain line and drain pan hypotheses*

Mr. Finocchiaro in his affirmative December 3 report identified the cause of the explosion as follows:

> Evaluation of the available evidence indicates that gasoline leaked into the engine compartment and created gasoline vapor that was ignited when an attempt was made to start the generator. This was the cause of the explosion. The gasoline that entered the engine compartment leaked from the drain pan during (and shortly after) the refilling of the fuel tanks. Two different leak paths from the drain pan to the engine compartment were identified:
>
> 1. Gasoline entered the drain hole, flowed through the rubber drain hose and then flowed out of the end of the hose, which was inside the engine compartment. This flowpath came into existence after the drain port was broken off the port side hull, which is undetermined at this time.
>
> 2. Gasoline that accumulated on the aft side of the drain pan leaked into the engine compartment via the 3 screw holes made during the modification. This flowpath came into existence when the access port was installed in 2010.[17]

Ms. Sanders critiqued these opinions in her February 7 rebuttal report.

Mr. Finocchiaro produced a rebuttal report dated June 30, 2020 in response to Ms. Sanders' December 3 affirmative report. In that report, Mr. Finocchiaro responded to the opinions disclosed by Ms. Sanders in her December 3 report, as he was permitted to do by Rule 26 and the Scheduling Order.

---

[17] Spectrum December 3 Report at 3.

In addition, however, Mr. Finocchiaro expanded on the analysis he provided in his December 3 report relating to the drain line and drain pan hypotheses.

First, Finocchiaro's June 30 report includes a discussion of the bilge blower and the role its use (or non-use) in the moments before the explosion may have played in the explosion.[18] Mr. Finocchiaro reviews the evidence suggesting the bilge blower was used in the moments before the explosion, and offers his opinion that "the use of the bilge blower would dilute but not eliminate the gasoline vapor concentration in the engine compartment due to ongoing evaporation."[19] The role of the bilge blower is not discussed in Mr. Finocchiaro's affirmative December 3 report.

Second, Finocchiaro's June 30 report includes an extended analysis of testing conducted by AEGI on the flowrate for the gasoline dripping through the screw holes in the drain pan.[20] Mr. Finocchiaro concludes, based on AEGI testing, that the time needed to introduce 7.1 ml of liquid gasoline into the engine compartment is approximately 19 minutes.[21] Mr. Finocchiaro's December 3 report does not discuss the AEGI testing.

Plaintiffs do not explain why Mr. Finocchiaro did not include his analysis regarding the bilge blower and the AEGI flowrate testing in his December 3 report. "The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial."[22] Rule 26(a)(2)(B) requires that an affirmative

---

[18] Spectrum June 30 Report at 5-6.

[19] *Id*. at 6.

[20] *Id*. at 5.

[21] *Id*.

[22] *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006).

expert witness report "contain a complete statement of all opinions to be expressed and the basis and the reasons therefor."[23] While Rule 26(e) permits supplemental reports, a supplemental report that seeks to "'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)."[24] The right to supplement "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report."[25] Mr. Finocchiaro labeled his June 30 report as a supplemental report, but the Federal Rules of Civil Procedure do not permit an expert to add new material in a supplemental report that could have been included in the initial affirmative or rebuttal report.[26] This is especially so here, where Mr. Finocchiaro's "supplemental report" was produced months after the production of the applicable rebuttal report—Ms. Sanders' February 7 report.

To the extent that Ms. Sanders' August 8 report responds to Mr. Finocchiaro's opinions on the drain pan and drain line theories presented in his June 30 report, that response will be allowed in view of: (1) the additional analysis and opinions provided on these topics by Mr. Finocchiaro in his June 30 report; and (2) the fact that Ms. Sanders did not have the opportunity to respond to that material in her February 7 report since Mr. Finocchiaro did not include it in his December 3 report.

## ORDER

For the reasons stated above, IT IS HEREBY ORDERED that the Motion is GRANTED-IN-PART and DENIED-IN-PART. Ms. Sanders' discussion of the vapor displacement theory in

---

[23] Fed.R.Civ.P. 26(a)(2)(B).

[24] *Beller ex rel. Beller v. U.S.*, 221 F.R.D. 689, 695 (D. N.M. 2003).

[25] *Id*.

[26] Fed.R.Civ.P. 26(a)(2)(B).

her August 8 report at pages 4 – 10 is stricken, along with the related conclusions and opinions from the "Conclusions and Opinions" section of the August 8 report on pages 13 – 15. The remainder of Ms. Sanders' August 8 report will not be stricken.

Signed May 3, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge