THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STACY MICKELSEN, KIRK R. MICKELSEN, and AMY V. BELLUM,<br><br>Plaintiffs,<br><br>v.<br><br>ARAMARK SPORTS & ENTERTAINMENT SERVICES,<br><br>Defendant,<br><br>and,<br><br>IN THE MATTER OF COMPLAINT OF SUMMER PARADISE, INC., ROGER COMSTOCK, TRACEE COMSTOCK, PRESTON MILLER, SANDY MILLER, BRIAN HORAN, KIM HORAN, DAVE DANIELS, BUD BULLARD, KRISTI BULLARD, CRAIG CURTIS, EARLYN CURTIS, DONALD BELLUM, STEVE MILLS, GREG PICKEREL, GINA PICKEREL, TROY SEYFER, GLENN LEWIS, REX ROLLO, NADINE ROLLO, STEVEN TYCKSEN, RUTH TYCKSEN, ROGER COOK, COLLEEN COOK, and KEVIN DANIELS as Owners or Owners Pro Hac Vice of a 2001 73-foot Stardust Houseboat "SUMMER PARADISE" for Exoneration from or Limitation of Liability,<br><br>Petitioners. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Lead Case No. 4:18-cv-00072-DN-PK<br><br>Member Case No. 2:18-cv-00158-DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This action consists of two consolidated cases arising from an explosion that occurred on the Summer Paradise houseboat on Lake Powell on July 12, 2017, resulting in the tragic death of one occupant and serious injuries to several others. The lead case is a negligence action by injured houseboat occupants Stacy Mickelsen, Kirk R. Mickelsen and Amy V. Bellum ("Plaintiffs") against defendant Aramark Sports & Entertainment Services ("Aramark"). The

member case is an action brought by the owners of the Summer Paradise houseboat ("Petitioners") to limit their liability for the damages caused by the explosion.

The parties agree the explosion was fueled by undispersed gasoline vapors that accumulated in the houseboat's engine compartment. Those vapors ignited and exploded on the night of July 12 as the occupants attempted to re-start the boat's generator. Plaintiffs allege Aramark is at fault for the presence of the vapors, and consequently the explosion and injuries.

Plaintiffs assert two separate negligence claims against Aramark:

First, Plaintiffs allege Aramark failed to notice during its pre-trip inspection of the Summer Paradise that: (a) the drain hose running from the fuel overspill drain pan to the hull had become detached and was lying in the engine compartment; and (b) the fuel overspill pan had three non-watertight screw holes. Plaintiffs allege those conditions allowed liquid gasoline to spill into the engine compartment, which vaporized and caused the explosion.

Second, Plaintiffs allege Aramark failed to exercise due care when it drilled the three non-watertight screw holes into the fuel overspill pan while installing an access panel on the Summer Paradise in 2008.[1]

Aramark now moves for summary judgment ("Motion").[2] As to the first negligence claim, Aramark admits it undertook to perform a "1 hour mechanical check" on the Summer Paradise before the July 12 excursion, but denies the houseboat's fuel overspill system (including the drain pan and drain hose) was within the scope of the undertaking. As to the second negligence claim, Aramark admits for purposes of this Motion that it (or its affiliate) drilled three non-watertight screw holes in the drain pan in 2008, but denies the leaky drain pan was a legal cause of the explosion.

For the reasons stated below, the Motion is GRANTED.

---

[1] Plaintiffs' First Amended Complaint and Jury Demand, docket no. 128, filed July 24, 2020.

[2] LPRM's Motion for Summary Judgment, docket no. 162, filed Oct. 13, 2020. Plaintiffs filed an opposition memorandum on Nov. 23, 2020, docket no. 179, and Aramark filed a reply memorandum on Dec. 22, 2020, docket no. 184.

The parties were notified on May 9, 2021 that an order granting the Motion was forthcoming.[3] On May 11, 2021, the Plaintiffs filed a motion asking the Court to consider additional facts and law before making a decision ("Motion for Consideration").[4] Aramark filed a response[5], to which Plaintiffs filed a reply.[6] On May 19, 2021, Aramark filed a motion for leave to file a sur-reply so it would have, as the moving party, the final word on the Motion ("Motion for Leave to File Sur-Reply").[7]

The Motion for Consideration and Motion for Leave to File Sur-Reply are GRANTED. The facts and law presented by Plaintiffs and Aramark in these motions have been considered in deciding the Motion. However, Petitioners' memorandum in support of the Motion for Consideration[8], styled as a joinder or adoption, is stricken as an unauthorized filing, and has not been considered in deciding the Motion.

---

[3] Notification of Ruling on LPRM's Motion for Summary Judgment, docket no. 261, filed May 9, 2021.

[4] Plaintiffs' Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(e) in Response to Motion for Summary Judgment Or, Alternatively, Request for Stay of Proceedings, docket no. 276, filed May 11, 2021.

[5] LPRM'S Opposition to Plaintiffs' Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(e) in Response to Motion for Summary Judgment Or, Alternatively, Request for Stay of Proceedings, docket no. 286, filed May 14, 2021.

[6] Plaintiffs' Reply in Support of Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(e) in Response to Motion for Summary Judgment Or, Alternatively, Request for Stay of Proceedings, docket no. 294, filed May 14, 2021.

[7] Motion for Leave to File Sur-Reply, docket no. 305, filed May 19, 2021.

[8] Petitioners' Joinder in and Adoption of Plaintiffs' Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(e) in Response to Motion for Summary Judgment or, Alternatively, Request for Stay of Proceedings, docket no. 287, filed May 14, 2021.

**Contents**

UNDISPUTED MATERIAL FACTS ........................................................................................ 4

DISCUSSION ...................................................................................................................... 7

    Aramark is entitled to summary judgment on Plaintiffs' negligence claim  relating to Aramark's undertaking to inspect the houseboat .................................................... 8

    Aramark is entitled to summary judgment on Plaintiffs' negligence claim relating to Aramark's modification of the drain pan ............................................................... 14

        There is insufficient evidence on which a reasonable jury  could base a finding of but for causation ...................................................................................... 15

        There is insufficient evidence to establish that the screw holes  in the drain pan were a substantial factor in the bringing about the harm .......................... 19

        The doctrine of superseding cause relieves Aramark of liability ........................ 21

**UNDISPUTED MATERIAL FACTS[9]**

1.      The Summer Paradise is a 73-foot houseboat manufactured in 2001 by Stardust Cruisers. It is powered by dual MerCruiser 5.7 liter V-8 gasoline engines, and is equipped with a Westerbeke 12.5 kW gasoline generator. [10]

2.      The engines and generator are housed in the boat's rear engine compartment, along with dual gasoline fuel tanks which provide a common source of fuel for the engines and generator.[11]

3.      The fuel tank fill location was at the centerline stern of the boat, just aft of the stern cabin entrance directly above the fuel tanks. The fill location was fitted with a containment drain pan, which had a drain hole designed to be plugged by a threaded stopper, known as a "scupper plug." The drain hole was routed to a drain port on the port side of the hull via a rubber hose located in the engine compartment. [12]

---

[9] For the purpose of presenting a coherent factual background, the facts proposed by the parties in their briefs have been supplemented with facts taken from the evidence submitted by Plaintiffs in connection with the Motion.

[10] Spectrum Forensics Report, Dec. 3, 2019, docket no. 161-2.

[11] *Id*.

[12] *Id*.; 3D Marine Report, Nov. 29, 2019, docket no. 159-1; AEGI Report, Feb. 7, 2020, docket no. 276-3.

4.      When filling the fuel tanks, the scupper plug is inserted, to prevent any fuel from escaping the containment drain pan and flowing through the drain hose into the lake. Any fuel that is spilled into the pan can be mopped up. When fueling is not occurring, the scupper plug is removed, allowing any water or other non-petroleum liquids to flow out of the containment area through the drain hose, and not risk any contamination to the fuel tanks seeping through the threaded fuel fill cap.[13]

5.      On the deck, directly aft of the drain pan was a rectangular access opening to the engine compartment. The access opening was a modification to the original construction of the boat made by Aramark in 2008, and was constructed to provide access to the fuel tanks. An access cover was designed to be placed over the opening on lengths of aluminum angle fastened to the floor structure. One of those angle pieces was fastened to the aft side of the drain pan with three non-watertight screws.[14]

6.      On July 9, 2017, the Summer Paradise embarked from Bullfrog Marina onto Lake Powell. Plaintiffs were on the voyage as guests.[15]

7.      On the evening of July 12, 2017, the generator stopped operating when it ran out of fuel. Portable gasoline caddies were used by the occupants to refill the boat's fuel tanks.[16] Unbeknownst to the occupants, the drain hose running from the containment drain pan to the hull had become detached and was resting in the engine compartment.[17] Several ounces of gasoline spilled in the drain pan, but was not wiped up. No absorbent material was placed in the fuel

---

[13] 3D Marine Report; 3D Marine Supplemental Report, July 7, 2020, docket no. 180-19; Declaration of Marc Fazioli, Nov. 20, 2020, docket no. 180-24; AEGI Report, Feb. 7, 2020, docket no. 276-3.

[14] *Id.*; Opposition, Statement of Additional Material Facts Nos. 1 and 9. Aramark disputes this fact. *See* Reply, Response to Statement of Additional Material Facts No. 1. For purposes of this Motion, this fact will be accepted as true.

[15] Motion, Statement of Undisputed Fact No. 53; Amended Complaint at ¶ 6.

[16] Motion, Statement of Undisputed Fact Nos. 67.

[17] Opposition, Statement of Additional Material Facts No. 12.

overspill panel during the refueling.[18] The spilled fuel ran down the hole in the drain pan, and through the detached drain hose into the engine compartment.[19] In addition, some fuel dripped through the non-watertight screw holes in the drain pan into the engine compartment.[20] Notwithstanding the occupants' use of the bilge blowers,[21] the gasoline in the engine compartment created explosive conditions.[22]

8.      After the refueling effort, attempts were made to start the generator. The first two attempts were not successful. On the third attempt, an explosion in the engine compartment occurred and injured Plaintiffs.[23]

9.      In July 2017, Aramark was a party to a Houseboat Management Agreement with the owners of the Summer Paradise houseboat ("Services Agreement").[24]

10.      In the Services Agreement, Aramark agreed to perform a "turn service" on the houseboat, typically after one owner completed a week-long trip and before the next owner started a trip.[25]

11.      The turn service included a "1 Hour Mechanical Check" (sometimes referred to as a "1 hour systems inspection"), a "Check in/out", and a "Fuel, Pump out, Water and Propane."[26]

---

[18] Motion, Statement of Undisputed Fact Nos. 67-68.

[19] Opposition, Statement of Additional Material Facts No. 33.

[20] Motion, Statement of Undisputed Fact No. 82.

[21] Opposition, Statement of Additional Material Facts Nos. 23-30.

[22] Opposition, Statement of Additional Material Facts No. 13.

[23] Motion, Statement of Undisputed Fact No. 70.

[24] Motion, Statement of Undisputed Fact No. 6.

[25] Motion, Statement of Undisputed Fact No. 7.

[26] Motion, Statement of Undisputed Fact No. 8. In response to Aramark's Statement of Undisputed Fact No. 8, Plaintiffs state that the Services Agreement contains additional terms relating to Aramark's work on the houseboat. That may be true, but Aramark's Statement of Undisputed Fact No. 8 does not purport to be an exhaustive list of Aramark's duties and obligations under the Services Agreement.  None of those additional terms specify inspection undertakings.

12.     In a form letter to the owners of the Summer Paradise, Aramark described the "1 hour systems inspection" as follows:

> This one page systems check is designed to allow our mechanics to "keep an eye on your boat" and fix minor problems as they occur. This inspection does not take the place of periodic maintenance or tune-ups, but does include the labor for regular fluid changes with the cost of materials additional.[27]

## DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[29] or "if a reasonable jury could return a verdict for the nonmoving party."[30] A fact is material if "it is essential to the proper disposition of [a] claim."[31] And in ruling on a motion for summary judgment, the factual record and all reasonable inferences drawn therefrom are viewed in a light most favorably to the nonmoving party.[32] However, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings."[33] "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[34]

---

[27] Motion, Statement of Undisputed Fact No. 18.

[28] Fed. R. Civ. P. 56(a).

[29] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[30] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (internal quotations omitted).

[31] *Adler*, 144 F.3d at 670.

[32] *Id.*

[33] *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).

[34] *Id.*

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[35] If the moving party carries this initial burden, the nonmoving party "may not rest upon mere allegations or denials of [the] pleading[s], but must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which it carries the burden of proof."[36] "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to defeat a properly supported motion for summary judgment."[37]

### Aramark is entitled to summary judgment on Plaintiffs' negligence claim relating to Aramark's undertaking to inspect the houseboat

Plaintiffs allege that Aramark failed to exercise due care in performing the "1 hour mechanical check" on the Summer Paradise prior to the fateful excursion. Plaintiffs allege that Aramark failed to notice that the drain hose that runs from the fuel overspill pan to the hull had become detached and was lying in the engine compartment, and further that the fuel overspill pan had three non-watertight screw holes in it. According to Plaintiffs, these defects in the fuel overspill system allowed liquid gasoline to spill into the engine compartment, where it vaporized and created an explosive pocket of air that ignited on the night of July 12.

Aramark responds that it did not owe a duty to Plaintiffs to inspect the fuel overspill system as part of the "1 hour mechanical check," and is accordingly entitled to summary judgment because the element of duty is lacking from Plaintiffs' negligence claim.

---

[35] *Adler*, 144 F.3d at 670-71.

[36] *Universal Money Ctrs., Inc.*, 22 F.3d at 1529 (internal quotations and citations omitted; emphasis in original).

[37] *Id.* (internal quotations omitted).

The question of whether Aramark owed a duty to Plaintiffs is governed by Restatement (Second) of Torts § 324A:[38] [39]

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Here, Aramark undertook, for consideration, to render services to the owners of the Summer Paradise by checking the mechanical systems of the houseboat prior to embarkation. If that duty included checking the fuel overspill system, Aramark could be subject to liability to any third persons—including houseboat guests such as Plaintiffs—who suffer physical harm arising out of its failure to exercise reasonable care *if*: (a) Aramark's negligence increases the risk of harm beyond what would have existed without the undertaking; (b) it undertook to perform a duty owed by the houseboat owners to the guests; or (c) the harm is suffered because the houseboat owners or the guests relied upon the undertaking.

Aramark does not owe a duty to Plaintiffs under § 324A relating to the houseboat's fuel overspill equipment because there is no evidence sufficient to raise a genuine question that inspection of that equipment was within the scope of the "1 hour mechanical check."

---

[38] *See Patentas v. U.S.*, 687 F.2d 707, 714 (3ʳᵈ Cir. 1982) ("Federal courts recognize the good samaritan rule as part of maritime tort law. We think that Restatement sections 323 and 324A state the rule correctly.")

[39] § 324A (1965) has been replaced by Restatement (Third) of Torts: Phys. & Emot. Harm § 43 (2012). Aramark cites § 324A as the applicable Restatement section, and Plaintiffs do not object. § 43 reads:

Aramark's duty to Plaintiffs is limited to the scope of its undertaking.[40] Aramark clearly did not undertake to conduct a day-long, stem-to-stern inspection of the houseboat. Rather, it undertook to conduct a "1 hour mechanical check."[41] A 1-hour inspection or checkup, by its very nature, is limited. Not every component or system on the boat would be inspected or could reasonably be expected or anticipated to be inspected.

Plaintiffs have not come forward with evidence to support a finding by a reasonable jury that an inspection of the houseboat's fuel overspill equipment was within the scope of Aramark's undertaking. Plaintiffs' expert witness, Capt. Mark Fazioli, states that an inspection of the fuel overspill equipment was within the scope of the "1 hour mechanical check," [42] but his opinion is not based on any authority, industry custom, or personal experience. Capt. Fazioli cites federal regulations and industry customs for the proposition that boats, as a matter of safety, should have fuel overspill systems in good working order. That, however, does not address the relevant question: should Aramark, in the exercise of reasonable care, have inspected the houseboat's fuel overspill equipment during a mechanical check or systems inspection that is limited in duration to one hour? Capt. Fazioli may have deep experience in boating matters, but he does not purport

___

An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to which a third person is exposed has a duty of reasonable care to the third person in conducting the undertaking if:

(a) the failure to exercise reasonable care increases the risk of harm beyond that which existed without the undertaking,

(b) the actor has undertaken to perform a duty owed by the other to the third person, or

(c) the person to whom the services are rendered, the third party, or another relies on the actor's exercising reasonable care in the undertaking.

[40] *Patentas*, 687 F.2d at 716 (holding that "the scope of a good samaritan's duty is measured by the scope of his or her undertaking"); *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1024 (7th Cir. 2018) (actor's undertaking was "limited to the scope of the contract").

[41] In addition to the "1 hour mechanical check", Aramark undertook to provide a "Check On/Off," and a "Fuel, Pump out, Water and Propane." Plaintiffs do not allege Aramark was negligent in providing these other services.

[42] Capt. Fazioli's opinion was excluded under Federal Rule of Evidence 702 in an order, docket no. 206, dated April 13, 2021. Plaintiffs filed a motion to reconsider that order, docket no. 220. An order denying that motion is being prepared.

to have any experience in the context of time-limited houseboat "mechanical checks" or "systems inspections", where the inspector, as a function of contractually limited time, has to prioritize and make decisions to exclude some things from the inspection. The issue is not whether it would have been a good idea for Aramark to inspect the fuel overspill equipment but rather whether Aramark, actually undertook to do so.

Plaintiffs cite the deposition testimony of one of the Summer Paradise owners, Brian Horan, in support of the proposition that the houseboat's fuel overspill system was within the scope of Aramark's "1 hour mechanical check".[43] Horan testified that his expectation was that Aramark's inspection would "catch anything that would create a problem before we went out."[44] Horan's expectation of an all-inclusive inspection, however, is not objective or based on "any significant probative evidence,"[45] and does not itself define the scope of Aramark's duty. Plaintiffs cite *Cottam v. CVS Pharmacy*[46] for the holding that customer understandings are relevant in determining the scope of an undertaking. The *Cottam* court held, however, that the understandings must be reasonable and "based on the totality of the [actor]'s communications."[47] There is not much to the "totality" in this case. The form letter sent by Aramark to Horan and

---

[43] Opposition at 31.

[44] Opposition at 31, citing Deposition of Brian Horan (Exhibit A to Opposition):

> A. This is actually the -- best way to describe it -- nuts and bolts of it. They actually check the engine oil level, the actual mechanical stuff to see is it time for an oil change or is there anything they can catch for something that's not right mechanically. That's something that would not be expected of the owners. Horan Depo. 52:8-14

> Q. And as part of that, it appears that there's a one-hour mechanical check. Do you see that?
> A. Yes.
> Q. What is that?
> A. That is a form we were looking at earlier where they're checking engine oil, everything on that list to make sure they didn't -- so they can catch anything that would create a problem before we went out. Horan Depo. 164:9-17

[45] *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, (1968).

[46] 764 N.E.2d 814 (Mass. 2002).

[47] *Id*. at 823.

other boat owners notified them that the "1 hour systems inspection" "does not take the place of periodic maintenance or tune-ups"—in other words, the "1 hour mechanical check" is not an all-inclusive inspection intended to "catch anything." Any expectations by Horan to the contrary were not reasonable and do not govern the scope of Aramark's undertaking. Similarly, Aramark's promise in the letter to "keep an eye on your boat" as part of the "1 hour systems inspection" could not reasonably be understood  to mean that Aramark would inspect every component and system on the houseboat as part of the "1 hour mechanical check." "[K]keep[ing] an eye on your boat" is a colloquial phrase that does not provide any insight into whether the fuel overspill equipment was within the proper scope of a time-limited inspection on a houseboat. That same letter specifically informed boat owners that that the "1 hour systems inspection" "does not take the place of periodic maintenance or tune-ups."

Plaintiffs argue that because the Services Agreement is silent on exactly what the "1 hour mechanical check" requires, a jury might just as reasonably find that it required an inspection of the fuel overspill equipment as that it does not—it is essentially a toss-up, so it should be left to the jury to decide.[48] That argument fails because on summary judgment Plaintiffs bear the burden of *coming forward with evidence that creates a genuine issue*, that is "sufficient . . . that a rational trier of fact could resolve the issue either way,"[49] and  sufficient to support "a verdict for the nonmoving party" by "a reasonable jury." [50] In making this evaluation, it is proper to consider that Plaintiffs must prove their claim by a preponderance of the evidence.[51] Indefinite descriptive comments in a sales brochure and a party's unsupported retrospective conclusory

---

[48] Reply in Support of Motion for Consideration at 10-11.

[49] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[50] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (internal quotations omitted).

[51] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("in ruling on summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden").

expectation are "mere scintilla[s] of evidence"[52] that do not create a jury question. It would be irresponsible to place unsupported subjective expectations and contract interpretations before a jury in a case with such tragic facts and consequences.

Nor can Plaintiffs prevail on their suggestion that Aramark was contractually responsible for the safety of the houseboat as a general matter, separate and apart from the "1 hour mechanical check."[53] The Services Agreement provides that "any and all repairs to the VESSEL shall be performed by [Aramark]…", and Aramark may refuse to pilot the houseboat "if pilot determines that unsafe conditions exist due to, but not limited to, weather, mechanical conditions and/or emergencies."[54] A separate Vessel Services Agreement between the boat owners provides that Aramark "reserves the right to refuse to captain, pilot, tow, or otherwise operate any VESSEL if [Aramark] determines **at its sole discretion** that an unsafe or illegal condition exists, or determines that the VESSEL is in a damaged or unseaworthy condition, or if there is the potential for a fuel spill or any other type of environmental contamination."[55] These provisions do not support a conclusion that Aramark was responsible for the safety of the houseboat.

What is needed, and what is lacking, is *evidence* on which a jury might reasonably find that the fuel overspill equipment was within the scope of the "1 hour mechanical check." It is undisputed that: (a) Aramark undertook to perform a time-limited inspection; and (b) Aramark told the boat owners the inspection did not replace the need for "periodic maintenance." Plaintiffs have not supplied sufficient evidence to reasonably suggest that Aramark, in the

---

[52] *Id.* at 252.

[53] Opposition at 25.

[54] Motion, Exh. 2 at SUMMER000123.

[55] *Id.* at SUMMER000125 (emphasis in original).

exercise of due care, was obligated to include the fuel overspill equipment in the "1 hour mechanical check."

The Third Circuit considered similar facts in *Evans v. Liberty Mut. Ins. Co.*[56] In that case, an insurer undertook to perform safety inspections of the plaintiff's manufacturing plant, but failed to inspect a particular machine in the plant that later caused injury to a plant employee. The plaintiff sued the insurer for negligent inspection. At the close of the trial, the district court entered a directed verdict in favor of the defendant based on § 324A. The Third Circuit affirmed, holding:

> [T]here was no evidence in the instant case that [defendant] had 'undertaken' to make an inspection of the entire plant of plaintiff's employer. The evidence, indeed, affirmatively established that [defendant] only made what may be described as 'spot' inspections. As earlier stated, it was under no legal duty or contractual obligation to make 'complete' inspections, and the evidence established that primary responsibility for the 'safety' of the plant of plaintiff's employer remained with the latter.[57]

Similar to the defendant in *Evans*, Aramark undertook to provide a limited inspection of the Summer Paradise. It did not undertake to inspect every component and system of the boat. There is insufficient evidence that the fuel overspill equipment was within the scope of Aramark's undertaking to provide a "1 hour mechanical check." As in *Evans*, there is no reason to send this negligent inspection claim to a jury. Aramark is entitled to summary judgment.[58]

### Aramark is entitled to summary judgment on Plaintiffs' negligence claim relating to Aramark's modification of the drain pan

In 2008, Aramark modified the Summer Paradise's fuel overspill equipment by drilling three non-watertight screw holes in the drain pan in connection with the cutting of an access

---

[56] 398 F.2d 665 (3rd Cir. 1968).

[57] *Id.* at 667.

[58] *Grice v. CVR Energy, Inc.*, 921 F.3d 966, 972 (10th Cir. 2019) (determining scope of duty imposed by contract on summary judgment)("not every services agreement requires the obligor to assume responsibility over the entirety of the obligee's operations").

panel in the aft deck for maintenance purposes. Plaintiffs allege gasoline leaked out of the drain pan through those screw holes into the engine compartment during the refueling on the night of the explosion. That gasoline, along with gasoline that spilled into the engine compartment through the detached drain line, vaporized and created a cloud of gas vapor in the engine compartment that ignited and caused the explosion. Plaintiffs allege that drilling non-watertight screw holes in a drain pan designed to catch gasoline spills constitutes negligence by Aramark and was a cause of the explosion.

"The plaintiff has the burden of proving causation-in-fact; she must introduce evidence which provides a reasonable basis for the fact finder to make the causal determination. Causation cannot be based upon speculation or conjecture, or upon equally balanced probabilities."[59]

"In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. Except as stated in §432(2),[60] this is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm."[61] Thus, Plaintiffs must show that Aramark's alleged negligence was both a "but for" cause of, and a "substantial factor" in causing, Plaintiffs' harm.

*There is insufficient evidence on which a reasonable jury*
*could base a finding of but for causation*

---

[59] Schoenbaum, Admiralty & Mar. Law § 5.5 (6th ed.)

[60] The scenario described in §432(2) in which but for causation is not required is not present here because the leaky drain pan by itself was not sufficient to cause the explosion under the conditions Plaintiffs assert existed at the time of the explosion.

[61] Restatement (Second) of Torts (1965) § 431, cmt. a; *see also* Schoenbaum, Admiralty & Mar. Law § 5.5 (6th ed.) ("One form of the test for cause-in-fact is the jury instruction that if the harm would not have occurred 'but for' the defendant's act, it was the cause-in-fact. This merely says that the injury would not have occurred without the defendant's negligent act. The 'but for' test is sometimes used in admiralty cases, but the better formulation, especially in cases involving multiple parties, is the 'substantial factor' test, which instructs the jury to find causation if, more likely than not, the defendant's act or omission played a substantial part in bringing about the injury.

Plaintiffs have not introduced sufficient evidence to support a reasonable jury finding that the explosion on the Summer Paradise would not have occurred but for the leaky drain pan. Plaintiffs' cause and origin expert Carl Finocchiaro described the cause of the explosion as follows:

> Evaluation of the available evidence indicates that gasoline leaked into the engine compartment and created gasoline vapor that was ignited when an attempt was made to start the generator. This was the cause of the explosion. The gasoline that entered the engine compartment leaked from the drain pan during (and shortly after) the refilling of the fuel tanks. Two different leak paths from the drain pan to the engine compartment were identified:
>
> 1. Gasoline entered the drain hole, flowed through the rubber drain hose and then flowed out of the end of the hose, which was inside the engine compartment. This flowpath came into existence after the drain port was broken off the port side hull, which is undetermined at this time.
>
> 2. Gasoline that accumulated on the aft side of the drain pan leaked into the engine compartment via the 3 screw holes made during the modification. This flowpath came into existence when the access port was installed in 2010.[62]

Mr. Finocchiaro also states that the primary source of the gasoline vapors in the engine compartment was the detached drain hose, with the leaky drain pan contributing a lesser amount of fuel to the explosion:

> This scenario [the detached drain hose] provides the most probable source of the quantity of gasoline vapor needed to cause this explosion…This is the only scenario consistent with the witness accounts which indicate that the bilge blower was used after refueling. Scenario 3 [the detached drain hose] is therefore the likely cause of this explosion, with Scenario 2 [the leaky drain pan] having likely contributed additional fuel. Gasoline entered the engine compartment through a broken drain fitting, which was found post incident in the engine compartment under the drain hole in the hull. An additional amount of gasoline vapor likely resulted

---

[62] Spectrum Report at 3, Dec. 3, 2017.

> from gasoline dripping through the screw holes (Scenario 2),
> though by comparison this would amount to a smaller volume.[63]

Mr. Finocchiaro further states that based on the flow rate of the gasoline through the screw holes, the amount of fuel necessary to cause an explosion of this magnitude, and the witness testimony that the bilge blower was used prior to the attempts to re-start the generator, it is "unlikely" that gasoline dripping through the screw holes in the drain pan "was the sole source of fuel for this explosion."[64] In other words, an additional source of fuel—such as the detached drain hose—was necessary to cause the explosion. Thus, according to Plaintiffs' own expert, the leaky drain pan was a likely *not* a but for cause of the explosion.

In a supplemental affidavit, Mr. Finocchiaro clarifies that, in his opinion, "the fuel delivered into the engine compartment by the leaky screw holes could have been the exclusive cause of the explosion but for the bilge blowers being used during periods of time while attempts were made to the start the generator."[65] In other words, had the conditions been different on the night of the explosion than Mr. Finocchiaro assumes them to be, the leaky drain pan *could have contributed* enough fuel to be the exclusive cause of the explosion. That, however, does not change Mr. Finocchiaro's stated opinion that under the conditions that he assumed to exist at the time of the explosion—including the use of the blowers—the leaky drain pan could not have contributed enough fuel by itself to cause the explosion.

Plaintiffs suggest a jury might find the blowers were *not* running prior to the explosion, in which case Mr. Finocchiaro's "but for the bilge blowers" opinion could support a reasonable jury finding that the leaky drain pan was a but for cause of the explosion.[66] While that is conceivable,

---

[63] Spectrum Report at 6, June 30, 2019.

[64] *Id*. at 5.

[65] Motion for Consideration at 4.

[66] Motion for Consideration at 5.

it contradicts the position that Plaintiffs have taken in this case, and more specifically on this Motion, that the blowers were running prior to the explosion.[67] On summary judgment, the court accepts the nonmoving party's version of events.[68] Plaintiffs' version of events is unequivocally that the blowers were running.[69] Plaintiffs cannot avoid summary judgment by refuting their own proposed facts.

Plaintiffs cite the testimony of Petitioners' expert, Peter Layson, that the leaky drain pan was the cause of the explosion.[70] That is not an accurate characterization of Mr. Layson's opinion as stated in his report. Mr. Layson does say that gasoline probably entered the engine compartment through the leaky drain pan, but he also says that the drain hose had become dislodged and was resting inside the engine compartment prior to the explosion: "the fractured fuel drain line thru hull fitting would have potentially allowed for fuel spilled into the catch basin to drain into the engine compartment."[71] Thus, Mr. Layson identifies two paths for fuel to enter the engine compartment: the leaky drain pan, and the dislodged drain hose. He does not indicate that either path contributed enough fuel to cause the explosion by itself.

In view of Mr. Finocchiaro's testimony, and the absence of any other evidence that the leaky drain pan was, by itself, capable of delivering enough gasoline to the engine compartment

---

[67] Opposition, Response to Aramark's Statement of Undisputed Fact No. 69 (Plaintiffs dispute Aramark's proposed fact that recites the witness testimony that the blowers were not run after refueling); Opposition, Statement of Additional Material Facts Nos. 23-30 (Plaintiffs propose as a material fact the witness testimony that the blowers were run after refueling.)

[68] *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("We accept the nonmovant's version of the events when reviewing a decision on summary judgment. When the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant. Instead, when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version.*)

[69] Opposition, Response to Aramark's Statement of Undisputed Fact No. 69; Opposition, Statement of Additional Material Facts Nos. 23-30.

[70] Motion for Consideration at 5.

[71] AEGI Report at 12.

18

under the applicable conditions to fuel an explosion of this magnitude, a reasonable jury could

not find that the leaky drain pan is a but for cause of the explosion.

*There is insufficient evidence to establish that the screw holes*
*in the drain pan were a substantial factor in the bringing about the harm*

Restatement (Second) of Torts § 433 identifies three considerations as "important in

determining whether the actor's conduct is a substantial factor in bringing about harm to

another":

> (a) the number of other factors which contribute in producing the
> harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of
> forces which are in continuous and active operation up to the time
> of the harm, or has created a situation harmless unless acted upon
> by other forces for which the actor is not responsible;
>
> (c) lapse of time.[72]

Based on these considerations, a reasonable jury could not find the leaky drain pan to be

a substantial factor in causing Plaintiffs' injuries.

First, the undisputed material facts show numerous "other factors" contributed to the

explosion. Most significantly, according to Plaintiffs' proposed statement of undisputed facts, the

drain hose had detached from the hull and was lying in the engine compartment, spilling

gasoline.[73] Plaintiffs' expert states that the gasoline from the detached drain hose was the

primary source of fuel for the explosion.[74] In addition, during refueling, several ounces of

gasoline were spilled in the drain pan, but absorbent materials were not used to soak up the

gasoline—instead, the gasoline was observed running down the drain hole that leads to the

---

[72] Restatement (Second) of Torts (1965) § 433.

[73] Opposition, Statement of Additional Material Facts Nos. 12-13.

[74] Opposition, Statement of Additional Material Facts No. 20.

disconnected drain line.[75] The boat owners were supposed to use absorbent materials to soak up gasoline that spilled during the refueling process.[76] They did not. The spilled gasoline accordingly flowed through the drain hole and/or the non-watertight screw holes into the engine compartment and produced the explosion. Finally, the threaded stopper was not in the drain hole, which allowed the spilled, unabsorbed gasoline to run down the drain hole into the engine compartment. These "other factors" made significant contributions to the explosion.

Second, the screw holes in the drain pan were a harmless situation until outside forces for which Aramark is not responsible led to the explosion. For nine years after Aramark drilled the non-watertight screw holes into the drain pan, the Summer Paradise was taken out on the lake, the generator was used, and the fuel tanks were refilled. There is no evidence that  an explosion occurred, or that the modified drain pan was anything other than harmless by itself. The explosion occurred only when forces out of Aramark's control were introduced: the detached drain hose, and the occupants' failure to follow basic safety protocols relating to the use of absorbent materials and threaded stopper.

Third, nine years passed from the time of the alleged negligence until the explosion. The passage of time does not by itself suffice to sever the causal connection, but

> [e]xperience has shown that where a great length of time has elapsed between the actor's negligence and harm to another, a great number of contributing factors may have operated, many of which may be difficult or impossible of actual proof. Where the time has been long, the effect of the actor's conduct may thus

---

[75] Opposition, Statement of Additional Material Facts Nos. 31-33.

[76] Aramark's Statement of Undisputed Fact No. 67 states the boat owners refueled "without putting any kind of absorbent material in the fill panel." Plaintiffs do not contradict that statement in their Opposition. Furthermore, Aramark's Statement of Undisputed Fact Nos. 9 and 10 state the boat owners agreed (in an agreement that is not at issue in this lawsuit) to use "absorbent devices" on the boat in situations where "a potential for any accidental release of petroleum products or pollutants exist." Plaintiffs do not contradict those statements in their Opposition, other than to say that the use of absorbent materials was not required by the Services Agreement. The point remains, however, that the boat owners knew they were supposed to use absorbent materials when refueling, but did not on this occasion.

> become so attenuated as to be insignificant and unsubstantial as
> compared to the aggregate of the other factors which have
> contributed.[77]

Although the passage of nine years is not dispositive, it works in concert with the other two § 433 considerations to negate the leaky drain pan as a substantial factor in the explosion.[78]

Based on these considerations, and the undisputed facts and evidence viewed in a light most favorable to Plaintiffs, Aramark's drilling of screw holes in the drain pan was not the legal cause of the explosion and Plaintiffs' injuries. No reasonable trier of fact could conclude otherwise.

### *The doctrine of superseding cause relieves Aramark of liability*

For a negligent actor to be relieved of liability by an intervening act:

> (1) the intervening force must bring about a harm that is different in kind from that which would otherwise have resulted from the actor's negligence;

> (2) the intervening force must not be a normal result of the original actor's negligence.[79]

"The doctrine of superseding cause is thus applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable. It is properly applied in admiralty cases."[80]

The detached drain hose, the occupants' failure to use absorbent materials to soak up the gasoline that spilled in the drain pan during refueling on the night of the explosion, and the

---

[77] Second Restatement § 433 cmt. f; *Peterson v. Underwood*, 264 A.2d 851 (Md. Ct. App. 1970) ("As the temporal distance between the established fact and a later occurrence increases, the logical force of a causal link between them diminishes.").

[78] *Heeter v. Honeywell Int'l Inc.*, 706 F. App'x 63, 67 (3d Cir. 2017).

[79] Schoenbaum, Admiralty & Mar. Law § 5.5 (6th ed.)

[80] *Id.*; *see also Lone Star Indus., Inc. v. Mays Towing Co., Inc.*, 927 F.2d 1453 (8th Cir. 1991) (applying doctrine of superseding cause to relieve negligent actor of liability).

occupants' failure to use the threaded stopper to stop spilled gasoline from flowing down the drain hole are each separate, unforeseeable intervening acts that relieve Aramark of liability. Those forces brought about a harm—an explosion—that is different in kind from that which would have resulted from Aramark's negligence relating to the leaky drain pan—a non-explosive quantity of gasoline in the engine compartment. And they were not a result of Aramark's negligence.[81]

In *Lone Star Indus., Inc. v. Mays Towing Co., Inc.*, the Eighth Circuit considered the fault of a towing company which brought a barge upriver and the company unloading the barge of its cargo.[82] The unloading process caused the bow to rise and the stern to sink. As the stern sank, it took on water through a crack allegedly caused by the towing company, and then the barge (and cargo) sank. The barge owner sued the towing company and unloading company. The district court found the towing defendant to be negligent and 60% liable for the accident, and the unloading defendant to be negligent and 40% liable. The Eighth Circuit reversed, finding that the towing defendant's negligence in causing a crack in the stern would have been relatively harmless because the crack was above the waterline of the loaded barge, and that the subsequent negligence of the unloading defendant was the superseding cause of the loss.[83] "[T]here must be a terminus somewhere, short of eternity, at which the second party becomes responsible in lieu of the first."[84]

---

[81] As discussed above, the houseboat's fuel overspill equipment was not within the scope of Aramark's duty to Plaintiffs. Aramark is accordingly not responsible for the presence of the detached drain hose in the engine compartment.

[82] 927 F.2d 1453 (8th Cir. 1991).

[83] *Id.* at 1460.

[84] *Id.* at 1461 (*quoting In re Kinsman Transit Co.*, 338 F.2d 708, 722 (2d Cir.1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963) (1965).

The detached drain hose and the occupants' failure to use absorbent materials to soak up the gasoline that spilled in the drain pan during refueling on the night of the explosion are unforeseeable intervening acts that relieve Aramark of liability.

**ORDER**

1.      Petitioners' memorandum in support of the Motion for Consideration[85], styled as a joinder or adoption, is stricken as an unauthorized filing because the Motion for Summary Judgment was not directed to Petitioners and Petitioners did not file any papers on that motion.

2.      Plaintiffs' Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(e) in Response to Motion for Summary Judgment Or, Alternatively, Request for Stay of Proceedings,[86] is GRANTED.

3.      Aramark's Motion for Leave to File Sur-Reply is GRANTED.[87]

4.      Aramark's Motion for Summary Judgment[88] is GRANTED.

5.      This Order involves two controlling questions of law as to which there are substantial grounds for difference of opinion:

- Is there a genuine issue of fact that inspection of the houseboat's fuel overspill equipment within the scope of Aramark's undertaking to perform a "1 hour mechanical check" of the boat?
- On the undisputed facts, was Aramark's modification of the drain pan in the houseboat's fuel overspill system a legal cause of the explosion that caused Plaintiffs' injuries?

An immediate appeal from the Order may materially advance the just termination of the litigation.[89]

---

[85] Petitioners' Joinder in and Adoption of Plaintiffs' Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(e) in Response to Motion for Summary Judgment or, Alternatively, Request for Stay of Proceedings, docket no. 287, filed May 14, 2021.

[86] Docket no. 276, filed May 11, 2021.

[87] Docket no. 305, filed May 19, 2021.

[88] Docket no. 162, filed Oct. 13, 2020.

6.      Upon Plaintiffs' filing of a notice of appeal from this order, they may move for a

stay pending the outcome of the appeal.[90]

Dated June 4, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[89] 28 U.S.C. §1292(b).

[90] *Id.*