THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STACY MICKELSEN, KIRK R. MICKELSEN, and AMY V. BELLUM,<br><br>Plaintiffs,<br><br>v.<br><br>ARAMARK SPORTS & ENTERTAINMENT SERVICES,<br><br>Defendant,<br><br>and,<br><br>IN THE MATTER OF COMPLAINT OF SUMMER PARADISE, INC., ROGER COMSTOCK, TRACEE COMSTOCK, PRESTON MILLER, SANDY MILLER, BRIAN HORAN, KIM HORAN, DAVE DANIELS, BUD BULLARD, KRISTI BULLARD, CRAIG CURTIS, EARLYN CURTIS, DONALD BELLUM, STEVE MILLS, GREG PICKEREL, GINA PICKEREL, TROY SEYFER, GLENN LEWIS, REX ROLLO, NADINE ROLLO, STEVEN TYCKSEN, RUTH TYCKSEN, ROGER COOK, COLLEEN COOK, and KEVIN DANIELS as Owners or Owners Pro Hac Vice of a 2001 73-foot Stardust Houseboat "SUMMER PARADISE" for Exoneration from or Limitation of Liability,<br><br>Petitioners. | MEMORANDUM DECISION AND ORDER DENYING-IN-PART AND GRANTING-IN-PART PLAINTIFFS' MOTION TO CORRECT SUMMARY JUDGMENT ORDER AND RECONSIDER UNDER FED.R.CIV.P. 54(b) AND 59(e); ORDER GRANTING CERTIFICATION OF FINAL JUDGMENT UNDER FED.R.CIV.P. 54(b)<br><br>Lead Case No. 4:18-cv-00072-DN-PK<br><br>Member Case No. 2:18-cv-00158 DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

In an order dated June 7, 2021, summary judgment was entered against Plaintiffs Stacy Mickelsen, Kirk R. Mickelsen, and Amy V. Bellum on their negligence claims against Defendant Aramark Sports & Entertainment Services ("Aramark").[1] Plaintiffs filed a motion asking the

---

[1] Memorandum Decision and Order Granting Motion for Summary Judgment ("Summary Judgment Order"), docket no. 313, filed June 7, 2021.

court to correct or reconsider the Summary Judgment Order ("Motion to Correct").[2] Aramark filed a memorandum in opposition.[3] Plaintiffs filed a reply memorandum.[4] For the reasons stated below, the Motion to Correct will be DENIED.

As part of the Motion to Correct, Plaintiffs also moved for an order certifying the summary judgment order as a final judgment under Fed.R.Civ.P. 54(b) ("Motion to Certify").[5] Aramark takes no position on that motion.[6] The Motion to Certify will be GRANTED.

## DISCUSSION

Motions to reconsider under Rule 54(b) are to be granted "only in exceptional circumstances."[7] "[E]xceptional circumstances" may include a court's misapprehension of facts, a party's position, or controlling law; an intervening change in controlling law; new evidence previously unavailable; or the need to correct clear error or prevent manifest injustice.[8]

Plaintiffs contend that four factual findings in the Summary Judgment Order are clearly erroneous, and that correcting those errors will have a material effect on the order.[9] Plaintiffs' arguments are not persuasive.

---

[2] Plaintiffs' Motion to Correct Summary Judgment Order and Reconsider Under Fed. R. Civ. P. 54(b) and 59(e), and for Subsequent Certification of Final Judgment under Fed. R. Civ. P. 54(b), docket no. 314, filed June 25, 2021.

[3] LPRM's Opposition to Plaintiffs' Motion to Correct Summary Judgment Order and Reconsider Under Fed. R. Civ. P. 54(b) and 59(e), and for Subsequent Certification of Final Judgment under Fed. R. Civ. P. 54(b) ("Opposition"), docket no. 328, filed July 23, 2021.

[4] Plaintiff's Reply in Support of Motion to Correct Summary Judgment Order and Reconsider Under Fed. R. Civ. P. 54(b) and 59(e), and for Subsequent Certification of Final Judgment under Fed. R. Civ. P. 54(b) ("Reply"), docket no. 331, filed August 6, 2021.

[5] Plaintiffs' Motion to Correct Summary Judgment Order and Reconsider Under Fed. R. Civ. P. 54(b) and 59(e), and for Subsequent Certification of Final Judgment under Fed. R. Civ. P. 54(b) at 9-12, docket no. 314, filed June 25, 2021.

[6] Opposition at 4-5.

[7] *Scalia v. Beantown Painting, Inc.*, 2020 WL 9256556, at *1 (D. Utah Dec. 29, 2020).

[8] *Id*.

[9] Motion to Correct at 3-4.

*The finding of fact regarding the leaky drain pan is not erroneous*

The Court finds in the Summary Judgment Order there is no evidence the leaky drain pan was, by itself, capable of delivering enough gasoline to the engine compartment under the applicable conditions to fuel the explosion.[10] Plaintiffs contend the expert reports of Petitioners' experts Peter Layson and William Nolan are evidence that the leaky drain pan was by itself, capable of delivering enough gasoline to the engine compartment under the applicable conditions to fuel the explosion, and the court's finding that no such evidence existed is erroneous.[11]

As an initial matter, the Nolan report was not part of the record on Plaintiffs' motion for summary judgment. Petitioners submitted the Nolan report with their joinder in Plaintiffs' Motion for Summary Judgment,[12] but Petitioners' joinder was stricken.[13] Plaintiffs did submit their cross-designation of Nolan in opposition to the Motion for Summary Judgment,[14] and made several passing references to Nolan's report in their briefing for the Motion for Summary Judgment,[15] but references to documents which have been stricken from the record cannot defeat a motion for summary judgment.[16] Plaintiffs had ample opportunity to submit Nolan's report as part of the summary judgment record, but did not.

---

[10] Summary Judgment Order at 18-19.

[11] Motion to Correct at 4.

[12] Petitioners' Joinder in and Adoption of Plaintiffs' Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(e) in Response to Motion for Summary Judgment, docket no. 287, filed May 14, 2021.

[13] Summary Judgment Order at 23.

[14] Plaintiffs' Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(E) in Response to Motion for Summary Judgment or, Alternatively, Request for Stay of Proceedings, Exhibit A, Plaintiff's Cross-Designation of Expert Witnesses, docket no. 276-1, filed May 10, 2021.

[15] Plaintiffs' Reply in Support of Motion for Consideration of Additional Facts and Law Under Fed. R. Civ. P. 56(E) in Response to Motion for Summary Judgment or, Alternatively, Request for Stay of Proceedings at 9, docket no. 294, filed May 17, 2021.

[16] 10A Fed. Prac. & Proc. Civ. § 2722 (4th ed.); *see also Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 858 (10th Cir. 1999).

But even if the Nolan report were part of the summary judgment record, it does not constitute evidence that the leaky drain pan was, by itself, capable of delivering enough gasoline to the engine compartment under the applicable conditions to fuel the explosion. Nolan never says that in his report. Rather, he says the leaky drain pan was the most probable source of the gas, but he acknowledges the broken drain hose might also have been a source:

> Although there are other potential means for the migration of gasoline vapors to enter the engine space, such as the broken drain hose thru hull fitting associated with the fuel fill basin. Evidence clearly shows the most probable source is through the screw holes in the aft bottom section of the fuel fill containment basin. The liquid gasoline that was spilled would drip through the screw holes into the engine space and begin vaporizing.[17]

Nolan doesn't address the question of whether the leaky drain pan could have caused the explosion by itself. Rather, the subject matter of Nolan's opinion is: how did the gasoline vapors get into the engine compartment? He concludes it was probably through the screw holes, but concedes the broken drain hose could have been an alternative or supplemental source. Nolan never addresses the issue Plaintiffs raise in the Motion to Correct: whether enough gasoline could have leaked through the drain pan under the provided conditions to cause the explosion if the leaky drain pan was the sole source of gasoline. Notably, Plaintiffs' own expert, Carl Finocchiaro, does address this issue, and concludes that, under the applicable conditions, it is unlikely the leaky drain pan could have, by itself, contributed enough to fuel to cause the explosion.[18] [19] Plaintiffs cannot defeat summary judgment by repudiating the testimony of their own expert witness and adopting instead the opinion of another party's expert.

---

[17] Fire Origin & Cause Unlimited Services, Inc. Report ("Nolan report") at 13, Feb. 7, 2020, docket no. 287-1.

[18] Spectrum Report at 5, June 30, 2019, docket no. 161-1.

[19] Plaintiffs argue in their Reply that Finocchiaro concluded that if the bilge blowers had not been recently operated, the leaky drain pan could have contributed enough fuel to cause the explosion. Reply at 8. As the Summary

Nolan expressly states in his report that gasoline vapors could have migrated into the engine compartment through the broken drain hose.[20] If that could have happened, then Nolan cannot definitively render the opinion that the leaky drain pan was the sole source of fuel for the explosion, because he does not rule out the possibility that the broken drain hose also contributed fuel. At most, Nolan implies the leaky drain pan could have caused the explosion by itself, if there was no other fuel source. But, according to Nolan, there may have been another potential fuel source—the broken drain hose.

Nolan merely says the leaky drain pan was the "most probable source" of the fuel—that is not the same as being the exclusive source of the fuel, especially in view of Nolan's acknowledgment that the broken drain hose might also have been a source. Nolan is basically saying: "there are two potential sources of the fuel, and one is more probable than the other." Nolan never says the two sources are mutually exclusive. Nolan never says both did not contribute—he just says the drain pan is a more probable source. That is far from saying the leaky drain pan was or could have been the sole cause of the explosion.

Plaintiffs do not provide any analysis in the Motion to Correct as to the Layson report. In any event, the Layson report was addressed in the Summary Judgment Order.[21] Layson says that gasoline probably entered the engine compartment through the leaky drain pan, but he also says that the drain hose had become dislodged and was resting inside the engine compartment prior to the explosion, meaning "the fractured fuel drain line thru hull fitting would have potentially allowed for fuel spilled into the catch basin to drain into the engine compartment."[22] Thus,

---

Judgment Order noted, Plaintiffs' version of events is that the blowers were running. That version of events was the one that was accepted and considered in the Summary Judgment Order. Summary Judgment Order at 17-18.

[20] Nolan Report at 13.

[21] Summary Judgment Order at 18.

[22] AEGI Report at 12, Feb. 7, 2020, docket no. 276-3.

Layson identifies two paths for fuel to enter the engine compartment: the leaky drain pan, and the dislodged drain hose. He does not indicate that either path contributed enough fuel to cause the explosion by itself.

In sum, neither the Nolan report nor the Layson report constitute evidence that the leaky drain pan was, by itself, capable of delivering enough gas to fuel the explosion. This finding of fact in the Summary Judgment Order is not erroneous.

*The finding of fact regarding the threaded stopper is not erroneous*

The court finds in the Summary Judgment Order that the explosion occurred only when forces out of Aramark's control were introduced, namely, the detached drain hose and the occupants' failure to follow basic safety protocols relating to the use of absorbent materials and threaded stopper.[23]

Plaintiffs argue the threaded stopper (scupper plug) and the absorbent materials were not "basic safety protocols", and the boat owners' failure to follow them should not be taken into account in the causation analysis.[24] This argument fails.

First, the detached drain hose by itself is a sufficient basis for the finding. The failure to follow the identified safety protocols are additional forces that contributed to the explosion, but the detached drain hose is alone sufficient to support a finding that the explosion only occurred when forces out of Aramark's control were introduced. Plaintiffs' argument accordingly fails.

Second, even if the boat owners' failure to follow the basic safety protocols were disregarded in the causation analysis, summary judgment remains appropriate on the issue of causation. As set forth in the Summary Judgment Order, Plaintiffs have failed to come forward

---

[23] Summary Judgment Order at 20.

[24] Motion to Correct at 6; Reply at 9.

with sufficient evidence on which a reasonable jury might find the explosion would not have occurred but for Aramark's alleged breach of duty in drilling the screw holes in the drain pan.[25] The findings relating to the threaded stopper and absorbent materials do nothing to change that, as those findings pertain to the findings on "substantial factor" causation and intervening cause, not "but for" causation. Without "but for" causation, there is no legal causation.[26]

Third, the point of stating in the Summary Judgment Order that basic safety protocols were not followed prior to the explosion is not to assign blame, but rather to show that unforeseeable events occurred that turned the screw holes from a harmless situation into a dangerous one. That evidence is relevant in the substantial factor and superseding cause analysis. Whether the boat owners were negligent or culpable in not using the threaded stopper and absorbent materials, or whether they knew anything at all about those basic safety protocols, does not affect the analysis in the Order.[27, 28]

Fourth, in the intervening cause analysis in the Summary Judgment Order, the main point is foreseeability, not breach of duty.[29] At issue is not whether the boat owners or Plaintiffs were negligent by not using the stopper and absorbent materials. What matters is that it was not reasonably foreseeable to Aramark in 2008 that the users of the boat were not going to use the

---

[25] Summary Judgment Order at 15-19.

[26] *See* Restatement (Second) of Torts (1965) § 431, cmt. a.

[27] Plaintiffs contend Aramark did not use the threaded stopper when it refueled the generator. Without opining on whether that occurred, loss and non-use of the stopper remains an unforeseeable outside force from the perspective of Aramark drilling non-watertight screw holes in the drain pan in 2008. As for Plaintiffs' contention that Aramark should have noticed the missing stopper in the course of performing its contractual obligations on the boat, Plaintiffs cannot add allegations to the Complaint at this stage of the case.

[28] Plaintiffs contend the Fazioli report was stricken, so it cannot be cited on the subject of the threaded stopper. Motion to Correct at 6 n.3. The Fazioli report, however, was not stricken in its entirety. Only four of Fazioli's opinions were challenged and struck. In any event, the Layson report makes the same point. Thus, there are two expert reports, both adopted by Plaintiffs, on the use of the threaded stopper. Furthermore, the Summary Judgment Order does not constrain these reports against Plaintiffs, but rather merely quotes them. Summary Judgment Order at 11, 18.

[29] Summary Judgment Order at 21-23.

stopper or absorbent materials during the refueling process. Those were supposed to be used, and there is no evidence suggesting Aramark was not justified in expecting they would be used. Again, the point of the evidence on the stopper and absorbent materials is not to prove the boat owners or Plaintiffs made a mistake or were contributorily negligent, but rather that outside forces and causes were in play that Aramark had no control over, which is relevant in the causation analysis.

*The finding of fact regarding the absorbent materials is not erroneous*

The last sentence in footnote 76 of the Summary Judgment Order reads:

> The point remains, however, that the boat owners knew they were supposed to use absorbent materials when refueling, but did not on this occasion.[30]

Plaintiffs contend there is no evidence that the boat owners knew they were supposed to use absorbent materials when refueling.[31]

The last sentence in footnote 76 of the Summary Judgment Order will be amended to read:

> The point remains, however, that absorbent materials were supposed to be used when refueling, but were not on this occasion.

This amendment does not change the outcome on the Motion for Summary Judgment. No finding or conclusion in the Summary Judgment Order is based on the premise that the boat owners knew they were supposed to use absorbent materials when refueling. Whether they knew

---

[30] Summary Judgment Order at 20, fn. 76.

[31] Motion to Correct at 7-8.

or not does not change the decision—the point is simply that absorbent materials were supposed to be used when refueling, and Aramark drilled the screw holes in that context.[32]

## ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. The Motion to Correct[33] is DENIED.

2. The last sentence in footnote 76 of the Summary Judgment Order is amended to read: "The point remains, however, that absorbent materials were supposed to be used when refueling, but were not on this occasion."

3. The Motion to Certify[34] is GRANTED. The Summary Judgment Order, as amended, is certified as a final judgment under Fed.R.Civ.P. 54(b).

Signed August 17, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[32] Plaintiffs identify a fourth allegedly erroneous finding of fact relating to the threaded stopper and absorbent materials. Since those topics are discussed supra, the fourth finding of fact will not be discussed separately in this order.

[33] Motion to Correct, docket no. 314, filed June 25, 2021.

[34] Motion to Certify, docket no. 314, filed June 25, 2021.